998 P.2d 913 (2000)
100 Wash.App. 805
CITY OF SPOKANE and Wheelabrator Spokane, Inc., Appellants,
v.
The STATE of Washington, DEPARTMENT OF LABOR AND INDUSTRIES, Respondent,
and
Rebound and United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, Local Union No. 44, Intervenors.
No. 23660-5-II.
Court of Appeals of Washington, Division 2.
May 12, 2000.
*914 Karen F. Jones, Riddell Williams, P.s., Daniel Joseph Gunter, David S. Frockt, Graham & James/Riddell Williams, Seattle, Michael Joseph Piccolo, Spokane City Attorney's Office, Spokane, for Petitioners.
Martha Patricia Lantz, Atty. Gen. Office/Labor & Ind., Olympia, for Respondent.
George Stephen Karavitis, Asst. City Atty., Tacoma, Daniel Brian Heid, City of Lakewood/Legal Dept., Lakewood, for amicus curiae Wash. State Assn. of Mun. Attys.
Richard Howard Robblee, Hafer, Price, Rinehart & Robblee, Anne Elizabeth Senter, Seattle, for Respondent Intervenors rebound & United Assn. of Journeymen Union #44.
HUNT, J.
The City of Spokane (City) and Wheelabrator Spokane, Inc., (Wheelabrator) appeal from the Department of Labor and Industries Director's (Director) determination that Wheelabrator must pay prevailing wages for maintenance work at the City's waste-to-energy facility, which Wheelabrator operates under contract. Finding no error, we affirm.

FACTS
Wheelabrator operates a City-owned waste-to-energy facility,[1] known as the Spokane Regional Solid Waste Disposal Project *915 (SWDP). Under the Operation and Maintenance Contract,
the City is obligated to pay Wheelabrator a flat fee per ton of solid waste processed at the SWDP. The fee is the City's sole ordinary financial contribution to the operation and/or maintenance of the SWDP. The fee may vary from year to year in accordance with a contractually agreed formula incorporating three national economic indices, but is otherwise fixed; the fee does not vary with the SWDP's maintenance or operating costs. The City raises the fee through "tipping charges" to customers.
. . . .
... Wheelabrator, at its sole cost and expense, is required to provide all management, supervision, personnel, materials, equipment, services and supplies necessary to operate, maintain and repair the facility....
Financed solely by the City, Wheelabrator operates the SWDP independently, using its own employees, equipment, and supplies:
Wheelabrator, at its sole cost and expense, is responsible for regularly maintaining the SWDP in a clean, orderly and fully functioning condition, including performing maintenance, implementing necessary repairs, and purchasing equipment or parts necessary to meet the performance standards set forth in the contract....
Since the SWDP began operating [in 1991], Wheelabrator has shut the plant down annually for maintenance ("the annual maintenance shutdown" [AMS]). The time and duration of the [AMS] is at Wheelabrator's sole discretion....
Wheelabrator, in its sole discretion, determines the nature and extent of maintenance to be performed during each [AMS].... Beyond its monitoring and oversight authority, the City has no authority to direct and control Wheelabrator's actions during the [AMS]....
All work during the shutdown is performed by Wheelabrator employees or contractors selected by Wheelabrator. The City does not employ or contract with any of the workers, and it does not direct or supervise any of the work....
Wheelabrator is responsible for all costs incurred during the [AMS]. The fees paid by the City do not vary according to the nature and extent of maintenance performed while the SWDP is out of service....
The purpose of the [AMS] is to keep the SWDP in proper working order....
. . . .
Wheelabrator has the exclusive authority to select and control the employees or contractors who perform work during the [AMS]. Wheelabrator selects, directs, and pays its subcontractors directly and without the City's involvement. Although the fees ordinarily paid by the City to Wheelabrator via the "tipping fee" pay for these expenses, the fees do not vary with Wheelabrator's maintenance costs.
Wheelabrator, a non-union employer, has not paid prevailing wages for the work performed during the AMS.
On March 7, 1997, the Department of Labor and Industries (L & I) requested the Office of Administrative Hearings to determine whether RCW 39.12 (the Prevailing Wage on Public Works Act) applies to work performed during the AMS. Following a hearing, the administrative law judge ruled that the work "is not subject to the prevailing wage laws of the State of Washington, Chapter 39.12 RCW."
L & I appealed the ruling to the Director. Siding with L & I, Rebound[2] and the United Association of Journeymen and Apprentices for the Plumbing and Pipefitting Industry of the United States and Canada, Local Union No. 44 (UAJA), moved to intervene and submitted briefs on the prevailing wage issue. The Director granted the motion to intervene and reversed the administrative law judge's decision, entering the following three conclusions of law at issue here:

*916 III.
The work performed during the [AMS] is done at Wheelabrator's discretion and direction, however the City of Spokane pays Wheelabrator with money it collects from citizens to accomplish the public purpose of converting garbage into electricity. Part of that process requires this annual shutdown. This is a City owned facility, paid for with public funds, operating to benefit the public. Therefore, the work performed during the [AMS] of the Spokane facility is "public work."

IV.
The work performed during the [AMS] is "performed by contract" under RCW 39.04.010, and is therefore not exempt from prevailing wage under RCW 39.12.020.

V.
The terms "ordinary maintenance" and "maintenance" in RCW 39.04.010 are ambiguous as evidenced by the dispute over their meanings. Therefore, examining legislative history of the public work statute is appropriate. The Washington Prevailing Wage on Public Works Act is remedial and should be construed liberally to effect the purpose of the statute. The purpose of the Act is "to protect the employees of governmental contractors from substandard wages and to preserve local wage standards...." The purpose of preserving the local wage structure is achieved when "maintenance performed by contract" is public work. All maintenance, when performed by contract is public work, and subject to prevailing wage. Maintenance is "ordinary" under the statute, when it is performed by in house employees of the public entity, and excluded.
(Citations omitted.)[3]
The Thurston County Superior Court certified the Director's decision for direct review by the Court of Appeals, see RCW 34.05.518, and we granted review. See RAP 6.3.

ANALYSIS

I. Prevailing WageStandard of Review
Whether the prevailing wage requirements of RCW 39.12.020 and 39.04.010 apply to the annual maintenance portion of Wheelabrator's contract is a legal question; thus, we review the Director's decision de novo to determine whether he has "erroneously interpreted or applied the law." RCW 34.05.570(3)(d); see Superior Asphalt & Concrete Co. v. Department of Labor & Indus., 84 Wash.App. 401, 404, 929 P.2d 1120 (1996). Application of the prevailing wage laws, however, involves "utilization of the specialized knowledge and judgment of the director of the Department of Labor and Industries." Southeastern Wash. Bldg. & Constr. Trades Council v. Department of Labor & Indus., 91 Wash.2d 41, 47, 586 P.2d 486 (1978). Accordingly, we must give deference to the Director's interpretation. Superior Asphalt, 84 Wash.App. at 405, 929 P.2d 1120.
The Legislature generally requires that minimum or "prevailing" wages be paid for "public works" as follows:
The hourly wages to be paid to laborers, workers, or mechanics, upon all public works and under all public building service maintenance contracts of the state or any county, municipality or political subdivision created by its laws, shall be not less than the prevailing rate of wage for an hour's work in the same trade or occupation in the locality within the state where such labor is performed.
RCW 39.12.020 (emphasis added). The Supreme Court has mandated liberal construction of this "remedial" statute to protect "`the employees of government contractors from substandard earnings and to preserve local wage standards.'" Everett Concrete Prod., Inc. v. Department of Labor & Indus., 109 Wash.2d 819, 823, 748 P.2d 1112 (1988) (quoting Unity Bank & Trust Co. v. United States, 756 F.2d 870, 873 (Fed.Cir.1985)).

*917 I. Public Works
The term "public work"
include[s] all work, construction, alteration, repair, or improvement other than ordinary maintenance, executed at the cost of the state or of any municipality, or which is by law a lien or charge on any property therein. All public works, including maintenance when performed by contract shall comply with the provisions of RCW 39.12.020.
RCW 39.04.010 (emphasis added).

A. "At the Cost of the City
The parties agree that, for the AMS work to be "public work" within the meaning of the statute, it must either (1) be executed at the cost of the state or municipality; or (2) give rise to a lien or charge on any property in the SWDP. The City and Wheelabrator argue that neither requirement is met here. L & I, Rebound, and UAJA argue to the contrary. We find the first alternative meaning dispositive.[4]
Although under contract with the City,[5] Wheelabrator operates and maintains the facility independently, except for City oversight. "[T]he fees ordinarily paid by the City to Wheelabrator via the `tipping fee' pay for these expenses," including the AMS. As the Director correctly noted, the waste facility is owned by the City, paid for with public funds, and operates to benefit the public. Accordingly, the AMS work is "executed at the cost of the City.
The Washington Supreme Court has held that
the Legislature mandated that wages paid to laborers, workmen or mechanics upon all public works of the state, county, municipality or political subdivision shall not be less than the prevailing rate in the same trade or occupation in the locality. RCW 39.12.020....
... RCW 39.04.010, dealing with public works, is so inclusive as to include every governmental body.
Drake v. Molvik & Olsen Elec., Inc., 107 Wash.2d 26, 28, 726 P.2d 1238 (1986).[6] Adopting the analysis of a 1983 Attorney General Opinion,[7] the Court indicated, "The source of funding does not determine the applicability of the prevailing wage statute," so long as it is publicly funded. Drake, 107 Wash.2d at 29, 726 P.2d 1238.
Here, the public pays for the cost of the facility's AMS through the tipping fees the City collects and passes through to Wheelabrator via a flat fee per ton of solid waste processed at the SWDP. These fees ultimately pay for the overall operation and maintenance of the facility, even though Wheelabrator has discretion to decide how they are spent.
Neither the City nor Wheelabrator suggest that the fees the City pays are not used to pay for the AMS work. On the contrary, the O & M Contract provides that "the fees ordinarily paid by the City to Wheelabrator via the `tipping fee' pay for the[][AMS] expenses."[8] There is a direct, tangible relationship *918 between the fees the City pays and "the operation and/or maintenance of the SWDP," including the AMS work.
That Wheelabrator determines the extent and necessary expenditures required to perform the annual maintenance does not alter the public origin of the monies it uses. We find Lycoming County Nursing Home Ass'n, Inc. v. Pennsylvania Dep't of Labor & Indus., 156 Pa.Cmwlth. 280, 627 A.2d 238 (1993), persuasive. Lycoming County created a private, non-profit association to construct and operate a nursing home. 627 A.2d at 240. The County leased the land to the association, loaned it $500,000 to cover start-up costs, and issued bonds with the express purpose of lending the money to the association for construction and operation of the nursing home. 627 A.2d at 240-41, 242. Ruling that the project was subject to Pennsylvania's prevailing wage law, the court rejected the association's argument "that because the [a]ssociation actually paid for and contracted for the project, the public nature of the project was destroyed, taking it out of the realm of "`public work.'" 627 A.2d at 242.
Here, the City contracted directly with Wheelabrator to construct, operate and maintain the City-owned waste-to-energy facility. This arrangement is similar to the county-nursing home contractual arrangement in Lycoming. The Lycoming court noted that a Pennsylvania "public work," requiring the payment of prevailing wages, is defined as
construction, reconstruction, demolition, alteration and/or repair work other than maintenance work, done under contract and paid for in whole or in part out of the funds of a public body where the estimated cost of the total project is in excess of twenty-five thousand dollars.
627 A.2d at 242 (quoting 43 PA. CONS.STAT. § 165-2(5)). The court reasoned:
The definition for "public work" does not require that a "public body" must be directly involved with the project; only that the project must be paid for in whole or in part with public funds. The evidence here demonstrates that public funds paid for the project, thus, creating a "public work."
627 A.2d at 242 (emphasis added).
Similarly, Washington's statutory definition of "public work" does not mandate the City's direct involvement in the AMS work performed by Wheelabrator. RCW 39.04.010. Rather, it requires only that the work be "executed at the cost of" the City. That requirement is met here. In essence, the City finances the work at the SWDP; how efficiently Wheelabrator operates the facility determines its profit margin.
Contrary to Wheelabrator's assertion, the Davis-Bacon Act, 40 U.S.C.A. §§ 276a-276a-5 (West 1986),[9] from which Washington's *919 Prevailing Wage Act was derived, does not compel narrow construction of the phrase "executed at the cost of." RCW 39.04.010. "[A] court need not adopt the construction placed on a similar statute in another state [or of the federal government] if the language of the statute in the adopting state is substantially different from the language in the original statute." Everett Concrete, 109 Wash.2d at 826, 748 P.2d 1112.[10] An implementing federal regulation defines "public work" as "building or work, the construction, prosecution, completion, or repair of which... is carried on directly by authority of or with funds of a Federal agency to serve the interest of the general public." 29 C.F.R. § 5.2(k) (1998) (emphasis added). "[O]mission of the word `directly' from the language of RCW 39.[04.010] leads to the conclusion that the [Washington] Legislature intended the scope of the state prevailing wage law to be broader than that of the Davis-Bacon Act." Everett Concrete, 109 Wash.2d at 826, 748 P.2d 1112.

B. "Maintenance"
Generally, prevailing wages must be paid for public projects unless they fall within the statutorily designated exception for "ordinary maintenance." At issue is whether Wheelabrator's annual maintenance of the City's waste-to-energy facility falls within this statutory exception. The City, Wheelabrator, and amicus curiae Washington State Association of Municipal Attorneys. (WSAMA) argue that AMS work is "ordinary maintenance" and, therefore, not "public work." L & I, Rebound, and UAJA argue that AMS work is "maintenance ... performed by contract" and, therefore, "public work." We concur with Director's interpretation of the statute, namely, the latter construction.
The parties agree that RCW 39.04.010 excludes "ordinary maintenance" from the definition of "public work." But the statute also provides: "All public works, including maintenance when performed by contract shall comply with the provisions of [the prevailing wage law]." RCW 39.04.010. At issue is whether the term "maintenance when performed by contract" may include routine "ordinary maintenance," thereby reducing the breadth of the "ordinary maintenance" exception. If so, then "ordinary maintenance" would not constitute "public work" for purposes of requiring prevailing wages unless it was performed by contract.
Wheelabrator and amicus WSAMA argue that the statute is not ambiguous and that "maintenance when performed by contract" must "refer to that remaining `maintenance' that is not `ordinary.'" Consistent with the Director's conclusion, L & I, Rebound, and UAJA argue that "maintenance of any kind, routine or otherwise, is public work when it is performed by contract."
The statute, on its face, is reasonably susceptible to multiple interpretations; therefore, we resort to rules of statutory construction and legislative history. Timberline Air Service, Inc. v. Bell Helicopter-Textron, Inc., 125 Wash.2d 305, 312, 884 P.2d 920 (1994); Kadoranian v. Bellingham Police Dep't, 119 Wash.2d 178, 185, 829 P.2d 1061 (1992). First,
"[w]hen a statute is ambiguous, the construction placed upon it by the officer or department charged with its administration, while not binding on the courts, is entitled to considerable weight in determining the intention of the legislature."

Weyerhaeuser Co. v. Department of Ecology, 86 Wash.2d 310, 315, 545 P.2d 5 (1976) (quoting State ex rel. Pirak v. Schoettler, 45 Wash.2d 367, 371, 274 P.2d 852 (1954)).

1. WAC Definition of "ordinary maintenance"
Here, L & I has promulgated prevailing wage regulations, establishing that "public work" includes "[m]aintenance[[11]] ... when *920 performed by contract," WAC 296-127-010(7)(a)(iv), but does not include:

Ordinary maintenance which is defined as work not performed by contract and that is performed on a regularly scheduled basis (e.g., daily, weekly, monthly, seasonally, semiannually, but not less frequently than once per year), to service, check, or replace items that are not broken; or work not performed by contract that is not regularly scheduled but is required to maintain the asset so that repair does not become necessary.

WAC 296-127-010(7)(b)(iii) (emphasis added).
Here, the facility's AMS meets the first part of the definition of "ordinary maintenance" in that it is performed on a regularly scheduled basis  yearly, the lowest frequency to qualify as "ordinary maintenance." But the AMS work does not meet the second part of the definition; rather, it falls outside the "ordinary maintenance" exception to the prevailing wage requirement because it is "performed by contract"Wheelabrator's general operation and maintenance contract with the City.

2. Legislative History
The WAC definition of "ordinary maintenance" is consistent with the legislative history behind RCW 39.04.010's "public work" definition. Before 1977, RCW 39.04.010 provided:
The term public work shall include all work, construction, alteration, repair or improvement other than ordinary maintenance, executed at the cost of the state or of any municipality, or which is by law a lien or charge on any property therein, but nothing herein shall apply to the construction, alteration, repair or improvement of any municipal street railway system.
Former RCW 39.04.010 (1976), amended by Laws of 1977, ch. 177, § 1. No differentiation was specified for ordinary maintenance performed by contract.
But in 1977, the Legislature amended this statute, adding the current "performed by contract" qualifier. This amendment began as House Bill 150, from which the portions underlined below were excised:
The term public work shall include all work, construction, alteration, repair, or improvement let out to public bid other than ordinary maintenance which has been traditionally, specifically, and consistently performed by regular maintenance employees of the state, or of any municipality, executed at the cost of the state or of any municipality, or which is by law a lien or charge on any property therein, but nothing herein shall apply to the construction, alteration, repair, or improvement of any municipal street railway system.
H.R. 150, 45th Leg., Reg. Sess. (Wash.1977); see HOUSE JOURNAL, 45th Leg., Reg. Sess. 441 (Wash.1977). Added after "railway system" was, "All public works, including maintenance, performed by private contractors shall comply with the provisions of RCW 39.12.020." HOUSE JOURNAL, 45th Leg., at 441.
According to the Committee on Local Government (Committee), the inserted "performed by private contractors" language meant that "on all public work contracts, including any contracts which may be let for maintenance, at least the prevailing rate of wage shall be paid to workers." DIGEST OF COMMITTEE AMENDMENT, H.R. 45-150, Reg. Sess. (Feb. 24, 1977). In its bill report, the Committee explained the purpose of the bill and its effect on existing law:
This bill revises an exclusion from definition of the term "public work," to exclude only ordinary maintenance which has traditionally been performed by regular maintenance employees. Previously, ordinary maintenance was not limited to maintenance which had traditionally been performed by maintenance employees. The effect of the bill is to limit the type of maintenance projects which may be done in-house by municipal or state employees and which must not necessarily be let out for public bids.
BILL REPORT, H.R. 45-150, Reg. Sess. (Feb. 24, 1977) (emphasis added). As ultimately passed, House Bill 150 simply added to the definition of "public work" by grafting onto the preexisting statute the last sentence: *921 "All public works, including maintenance when performed by contract, shall comply with the provisions of RCW 39.12.020 [prevailing wage law]." Former RCW 39.04.010 (Laws of 1977, ch. 177, § 1); see SENATE JOURNAL, 45th Leg., 1st Ex.Sess.1925 (Wash. 1977).
L & I, Rebound, and UAJA persuasively contend this legislative history "confirms that the Legislature intended to narrow the definition of `ordinary maintenance' to assure that the laborers, workers, and mechanics identified in RCW 39.12.020 would be paid prevailing wage when they were retained, by contract, at the cost of a public entity, to perform maintenance, of any kind, on a public asset." We agree.
Given the requirements that we (1) liberally construe Washington's prevailing wage statute and (2) accord great deference to the Director's interpretation, we hold the Director's conclusion, that "[m]aintenance is `ordinary' ... when it is performed by in house employees of the public entity," to be a legally valid interpretation or application of RCW 39.12, The Prevailing Wage on Public Works Act. Consequently, AMS work, performed by private laborers under contract with Wheelabrator, does not constitute "ordinary maintenance" and, therefore, is subject to the statutory prevailing wage.
We hold that the Director did not err in deciding that AMS work is "public work" subject to prevailing wage law. Affirmed.
ARMSTRONG, C.J., and SEINFELD, J., concur.
NOTES
[1] "[A] solid waste combustion facility with electric power production capability...." The facility incinerates solid waste and uses the heat to generate electricity.
[2] "[A] voluntary association of labor unions throughout Washington State which represent [sic] construction industry workers."
[3] The City and Wheelabrator also assigned error to the Director's refusal to allow them to file briefs in response to those filed by the intervenors. At oral argument, however, they conceded that this is no longer at issue.
[4] Because the AMS work is "executed at the cost of" the City, it is unnecessary to resolve whether that work also "is by law a lien or charge on any property." RCW 39.04.010.
[5] The City did not use the public bid process to award this contract. See RCW 35.22.625. Rather, it contracted directly with Wheelabrator:

In 1986, the City issued a Request for Qualifications to vendors interested in building and operating a waste-to-energy facility. Fifteen vendors submitted Qualification Statements, from which five were selected to submit detailed proposals. After reviewing the submitted proposals, the City determined that Wheelabrator... was the "best qualified" to design, construct and operate the proposed waste-to-energy facility.
[6] In Drake, the Supreme Court concluded that prevailing wages were required for a Seattle Housing Authority construction project funded entirely by the federal government. 107 Wash.2d at 28, 726 P.2d 1238.
[7] The Attorney General opined that, notwithstanding complete federal funding, because a contractor working for a housing authority would have a lien against the housing authority's property for payment, the contractor's work would still constitute "public work." 1983 Op. Att'y Gen. No. 2, at 4. The Attorney General did not, however, discount inquiry into the source of a project's funding. Op. Att'y Gen. at 4-5.
[8] NewMech Cos., Inc. v. Independent Sch. Dist., 540 N.W.2d 801 (Minn.1995), does not support Wheelabrator's argument that the fees paid by the City are insufficient to trigger Washington's prevailing wage requirements. In NewMech, the Minnesota Supreme Court narrowly construed the definition of "public work," which includes the phrase "financed in whole or part by state funds," because violation of the prevailing wage law is a crime in Minnesota. 540 N.W.2d at 803. Thus, a school district's construction of a school was not a "public work" requiring the payment of prevailing wages because there was no "direct relationship" between the project and state funds (1) scheduled to be received at a later date to reduce the district's debt owed on issued bonds; or (2) designed to replace revenues lost to property tax credits. NewMech, 540 N.W.2d at 804-05.
[9] The Davis-Bacon Act provides:

The advertised specifications for every contract in excess of $2,000 to which the United States... is a party, for construction, alteration, and/or repair, ... of public buildings or public works of the United States ... which requires or involves the employment of mechanics and/or laborers shall contain a provision stating the minimum wages to be paid various classes of laborers and mechanics which shall be based upon the wages that will be determined by the Secretary of Labor to be prevailing for the corresponding classes of laborers and mechanics employed on projects of a character similar to the contract work in the city, town, village, or other civil subdivision of the State in which the work is to be performed ... and every contract based upon these specifications shall contain a stipulation that the contractor or his subcontractor shall pay all mechanics and laborers employed directly upon the site of the work, unconditionally and not less often than once a week, and without subsequent deduction or rebate on any account, the full amounts accrued at time of payment, computed at wage rates not less than those stated in the advertised specifications, regardless of any contractual relationship which may be alleged to exist between the contractor or subcontractor and such laborers and mechanics.
40 U.S.C.A. § 276a(a) (West 1986).
[10] The holding in City of Spokane v. Taxpayers of City of Spokane, 111 Wash.2d 91, 98, 758 P.2d 480 (1988), that the "tipping charges" paid by SWDP customers (from which the City raises the SWDP operating and maintenance fee) do not "involve payment from Spokane's general tax revenues," does not bear on the applicability of the prevailing wage law to the AMS work.
[11] "Maintenance is defined as keeping existing facilities in good usable, operational condition." WAC 296-127-010(7)(a)(iv).