Joseph L. MANSON and Christine Manson, husband and wife, Plaintiff,

v.

WHEELABRATOR SPOKANE, INC., a foreign corporation, Defendant.

No. CV–04–075–FVS.

United States District Court, E.D. Washington.

Nov. 22, 2004.

Paul James Burns, Paul J. Burns PS, Spokane, WA, for Plaintiff.

Karen F. Jones, Kristen L. Kirmer, Riddell Williams PS, Seattle, WA, for Defendant.

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS–MOTION FOR PARTIAL SUMMARY JUDGMENT

VAN SICKLE, Chief Judge.

**THIS MATTER** came before the Court pursuant to Plaintiff's motion for partial summary judgment, Ct. Rec. 7, and Defendant's cross-motion for partial summary judgment, Ct. Rec. 16. The Court heard oral argument in this matter on November 1, 2004. Plaintiff was represented by Paul

Burns. Defendant was represented by Karen Jones.

**BACKGROUND**

The defendant, Wheelabrator Spokane, Inc., owned by Wheelabrator Technologies, Inc., a Delaware corporation, oversees the design, construction, operation and maintenance of a waste-to-energy facility in Spokane, Washington, known as the Spokane Regional Solid Waste Disposal Project ("SWDP"). The City of Spokane ("City") owns SWDP and Defendant operates it in accordance with the Amended Operation and Maintenance Contract ("O & M Contract"), entered into between the defendant and the City on August 28, 1989. The O & M Contract has a term of twenty years.

Under the O & M Contract the City is obligated to pay Defendant a flat fee per ton of solid waste that is processed at the SWDP. The fee is the City's sole ordinary financial contribution to the operation and maintenance of the SWDP. The fee may vary from year to year in accordance with a contractually agreed formula, but is otherwise fixed; the fee does not vary with the SWDP's maintenance or operating costs. Financed solely by the City, Defendant operates the SWDP independently, using its own employees, services, equipment and supplies. Under the O & M Contract, Defendant, at its sole cost and expense, is responsible for regularly maintaining the SWDP in a fully functioning condition, including performing maintenance, implementing necessary repairs, and purchasing equipment or parts necessary to meet the performance standards set forth in the O & M Contract. Defendant performs some of this work on an ongoing basis and some during an annual maintenance shutdown period ("AMS"). Maintenance work performed during the scheduled shutdown periods is usually done by specialized contractors with whom Defendant separately contracts for that purpose.

The plaintiff, Joseph L. Manson, has been employed by Defendant at the SWDP as a mechanic since December 1998, and lead mechanic since April 2001. Plaintiff is responsible for the ordinary, regularly scheduled maintenance required to service, check and otherwise keep all of the equipment in good working order. As lead mechanic, Plaintiff is also responsible for conducting weekly safety meetings with mechanics, as well as training and directing other mechanics. Plaintiff is not responsible for the maintenance work performed during the AMS.

Defendant is a non-union employer and pays Plaintiff an hourly wage. Since February 2001, Plaintiff has been paid at least $21.85 per hour. Typically, Plaintiff works from 7:00 a.m. to 3:30 p.m., Monday through Friday. Plaintiff receives a 30-minute meal period each day. Until April 2004, Plaintiff was required to keep a pager/radio on at all times during his work day, including his meal period. Although he was required to wear a radio, Plaintiff was allowed to use his 30-minute meal period for his own personal use and could leave the SWDP site if he obtained permission. Plaintiff was not paid for his meal periods. However, if Plaintiff was required to return to work prior to the end of his meal period, Defendant's policy, until April 2004, stated that another meal period would be provided or the meal period would be compensated.

Plaintiff brought this action against Defendant, claiming he is entitled to be paid prevailing wages under RCW 39.12.020 for his work performed at the SWDP. Plaintiff further claims he is entitled to be compensated for all unpaid meal periods between February 3, 2001 and April 2004. Finally, Plaintiff claims Defendant is liable for double damages under RCW 49.52.070 for

both his unpaid prevailing wages and unpaid meal periods. Plaintiff now seeks an order of partial summary judgment on these issues. Defendant filed a cross-motion for summary judgment with regard to Plaintiff's prevailing wage claim.

## DISCUSSION

### A. Summary Judgment Standard

A moving party is entitled to summary judgment when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552 (1986). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir.1982). Inferences drawn from facts are to be viewed in the light most favorable to the non-moving party, but the non-moving party must do more than show that there is some "metaphysical doubt" as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 572, 586–87, 106 S.Ct. 1348, 1356 (1986). The non-moving party cannot rely on conclusory allegations alone to create an issue of material fact. *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir.1993). There is no issue for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A mere "scintilla of evidence" in support of the non-moving party's position is insufficient to defeat a motion for summary judgment; "there must be sufficient evidence upon which a jury could reasonably find for the non-movant." *Id.* at 252, 106 S.Ct. at 2512.

### B. Prevailing Wage Claim

Plaintiff claims that as a matter of law he is entitled to be paid "prevailing wages" for his work performed at the SWDP because it constitutes "public work". RCW 39.12.020 requires that prevailing wages be paid to laborers, workers, and mechanics for public works. The statute provides:

The hourly wages to be paid to laborers, workers, or mechanics, upon all public works and under all public building service maintenance contracts of the State or any county, municipality or political subdivision created by its laws, shall be not less than the prevailing rate of wage for an hour's work in the same trade or occupation in the locality within the State where such labor is performed.

The term public works includes

all work, construction, alteration, repair or improvement *other than ordinary maintenance*, executed at the cost of the State or of any municipality, or which is by law a lien or charge on any property therein. *All public works, including maintenance when performed by contract, shall comply with the provisions of RCW 39.12.020.*

RCW 39.04.010 (emphasis added).

In support of his argument that the work he performed at the SWDP constitutes public work for which he is entitled to be paid a prevailing wage, the Plaintiff cites *City of Spokane v. Department of Labor & Industries*, 100 Wash.App. 805, 998 P.2d 913 (2000). In *City of Spokane*, Defendant and the City litigated the issue of whether the work performed at the SWDP during the annual maintenance shutdown period ("AMS") constituted "public work" within the meaning of the statute. Under RCW 39.04.010, for work to constitute public work it must either (1) be executed at the cost of the state or municipality; or (2) give rise to a lien or charge on any property within the SWDP. *City of Spokane*, 100 Wash.App. at 811–812, 998 P.2d 913. The Court of Appeals held that the work performed at the

SWDP during the AMS is public work because it is executed at the cost of the City: SWDP is "owned by the City, paid for with public funds, and operates to benefit the public." *Id.*

After concluding that the work performed during the AMS constitutes public work, the Court of Appeals addressed whether such work was subject to the prevailing wage requirements of RCW 39.12.020. Prevailing wages must be paid for public works unless the work falls within the statutory exception for "ordinary maintenance". *See* RCW 39.04.010. The Court of Appeals held that the workers who performed maintenance work during the AMS must be paid prevailing wages because such work performed by private laborers under contract with Defendant did not constitute "ordinary maintenance". *Id.* at 820, 998 P.2d 913. While the Court of Appeals addressed the AMS work, it did not directly address the issue presently before the Court; whether ordinary maintenance work performed by Defendant's regular employees (i.e.Plaintiff) is also subject to the statutory prevailing wage requirement.

Defendant argues that Plaintiff's work constitutes "ordinary maintenance" and is therefore not public work for purposes of requiring prevailing wages. Plaintiff argues that to the extent his work involves maintenance, it is maintenance performed by contract, which is subject to the prevailing wage requirement. Whether the prevailing wage requirements of RCW 39.12.020 and 39.04.010 apply to Plaintiff's work at the SWDP is a legal question. *City of Spokane,* 100 Wash.App. at 810, 998 P.2d 913.

Defendant argues that the maintenance work performed by Plaintiff falls squarely within the language of WAC 296–127–010(7)(a)(iv), which excludes ordinary maintenance from prevailing wage requirements:

Ordinary maintenance which is defined as *work not performed by contract* and that is performed on a regularly scheduled basis (e.g., daily, weekly, monthly, seasonally, semiannually, but not less frequently than once per year); to service, check or replace items that are not broken; or work not performed by contract that is not regularly scheduled but is required to maintain the asset so that repair does not become necessary. (emphasis added)

In *City of Spokane,* the Court of Appeals looked at this definition and acknowledged that the work performed during the AMS meets the first part of the definition of ordinary maintenance in that it is performed on a regularly scheduled basis, but found that it does not meet the second part of the definition. The Court of Appeals concluded that the work performed during the AMS fell outside the ordinary maintenance exception to the prevailing wage requirement because it was performed by contract. *Id.* at 818–819, 998 P.2d 913. The contract that made the AMS work subject to prevailing wage was the O & M Contract between Defendant and the City of Spokane. *Id.* This is the same contract under which Plaintiff's work is performed.

■ Like the AMS work, Plaintiff's work as a mechanic on the site of the SWDP is directly related to the work that Defendant contracted with the City to perform and necessary for the completion of that work. Similar to the work performed during the AMS, Plaintiff's work also meets the first part of the WAC definition of ordinary maintenance in that it is performed on a regularly scheduled basis and for the purposes described above in the regulation. Furthermore, Plaintiff's work, like the work performed during the AMS, does not meet the second part of the definition; rather it falls outside the ordinary maintenance exception to the prevailing

wage requirement because it is performed by contract—the O & M Contract. In fact, Defendant actually concedes that to the extent Plaintiff's work involves maintenance work, it is maintenance performed by contract:

> Under the O & M Contract, Wheelabrator is responsible for regularly maintaining the facility in a fully functioning condition. At all relevant times, Wheelabrator has employed Plaintiff Joseph Manson and two to three other mechanics to perform the ordinary, regularly scheduled maintenance required to service, check and otherwise keep all of the plan equipment in good working order. (Conklin Decl. at ¶ 6).

Defendant's Statement of Facts, ¶ 4 (emphasis added). Furthermore, the ordinary maintenance exception upon which Defendant relies is limited to maintenance performed by in-house employees of the public entity. *City of Spokane*, 100 Wash.App. at 820, 998 P.2d 913. It is undisputed that Plaintiff has always been an employee of private contractor, Defendant Wheelabrator, and never an in-house employee of the City. Finally, the Court notes that holding that Plaintiff's maintenance work performed at the SWDP constitutes public work is consistent with the legislative history behind the public work definition. *See City of Spokane*, 100 Wash.App. at 819–20, 998 P.2d 913 (noting that ordinary maintenance is defined narrowly to assure that the laborers, workers, and mechanics identified in RCW 39.12.020 would be paid prevailing wage when they were retained, by contract, at the cost of a public entity, to perform maintenance, *of any kind*, on a public asset).

The Court determines that Plaintiff's work performed at the SWDP constitutes public works under RCW 39.04.010. Therefore, Plaintiff is entitled to be paid prevailing wages for his work under RCW 39.12.020. Accordingly, Plaintiff's motion for partial summary judgment is granted on this basis.

### C. Defendant's Cross–Motion

Defendant filed a cross-motion for summary judgment, arguing that in the event Plaintiff is entitled to be paid a prevailing wage, (1) the prevailing wage applicable to Plaintiff is the rate in effect on the date the O & M Contract was executed, and (2) Defendant is not liable to Plaintiff because it has paid him at or above the applicable prevailing wage rate at all times during Plaintiff's employment.

#### 1. *Applicable Prevailing Wage Rate*

WAC 296-127-011(4) states that the applicable wage rates for a public works contract "shall be those that are in effect on the date when the contract was executed." The regulation further states that these "rates shall remain in effect for the duration of the contract." Relying on this regulation, Defendant argues that since the O & M Contract is the only contract governing Plaintiff's work for Defendant, it is this 1989 contract that controls the applicable prevailing wage rate. Plaintiff argues that this assertion is contrary to the policy and purpose of the prevailing wage statute, RCW 39.12.

Washington's prevailing wage statute is a remedial statute that must be construed liberally to carry out its two purposes: to protect the employees of government contractors from substandard earnings and to preserve local wage standards. *Everett Concrete Products, Inc., v. Dep't of Labor & Indus.*, 109 Wash.2d 819, 823, 748 P.2d 1112 (1988). Accordingly, the employees, not the contractors, are the beneficiaries of the statute. *Id.* To articulate the policy and purpose behind the prevailing wage statute, the Washington Supreme Court has previously looked to federal prevailing wage law, the Davis–

Bacon Act, 40 U.S.C. § 276(a). *Id.* at 824, 748 P.2d 1112. Although Washington courts have noted textual differences between the two Acts, they find cases and regulations interpreting the Davis–Bacon Act relevant and persuasive in analyzing and applying RCW 39.12. *Id.*

In interpreting the federal Davis–Bacon Act, the United States Department of Labor Wage Appeals Board has observed: "The very concept of a prevailing wage necessarily encompasses a current wage. A wage simply cannot be prevailing if it is outdated." *Modernization of the John F. Kennedy Federal Building,* WAB Case No. 94–09, at pg. 5 (1994 WL 574115) (1995 WL 256777). Plaintiff relies on this decision to support his argument that he is entitled to a current prevailing wage, rather than the rate in effect on the date the O & M Contract was executed. However, in that case, the Department of Labor twice found (and the Wage Appeals Board affirmed) that the wage rate applicable to the contract was the wage rate in effect on the date of the contract, or in that case, the contract option, and that the contractor was not required to incorporate all modifications to the wage rate that were published after exercise of the contract option but before construction was commenced. 1995 WL 256777, at 1.

The federal authority cited by Plaintiff is consistent with WAC 296–127–011(4) and requires the Court to find that the prevailing wage rate applicable to Plaintiff is that rate in effect on the date the O & M Contract was executed. It is this contract to which the prevailing wage law, RCW 39.12, applies because it is this contract under which Plaintiff performs public work.

█ Plaintiff is correct in arguing that in this case, the plain language of WAC 296–127–011(4) benefits Defendant, the contractor, and not Plaintiff, the employee. While it is true that the prevailing wage statute and regulations are intended to benefit employees, WAC 296–127–011(4) recognizes that this benefit cannot be enforced without any consideration of the needs of contractors. Contractors are entitled to some certainty when it comes to requesting, approving and executing bids for any given contract. If a contractor is required to pay new rates as soon as they are published, the contractor will have no way of predicting in advance what his labor costs may be at any point in the future. This would make it impossible to budget or bid for any public works contract. If a contractor cannot accurately estimate his labor costs when bidding or budgeting for a contract, there is no certainty that the contractor will be able to accomplish the contract. WAC 296–127–011(4) recognizes that in enacting RCW 39.12, the legislature did not intend to discourage contractors from bidding on public works contracts, prevent them from being able to predict or budget their costs, hamper the negotiation of bids, or put the successful completion of public works contracts at risk. The regulation recognizes that the interests of all parties must be balanced.

Plaintiff argues that judicial precedent requires the Court to liberally construe RCW 39.12 and ignore the plain language of WAC 296–127–011. Courts apply the same rules of statutory construction to agency rules and regulations. *See City of Seattle v. Allison,* 148 Wash.2d 75, 81, 59 P.3d 85 (2002). In any case involving the interpretation of a statute or regulation, the first step a court takes is to look at the plain meaning of its terms. *Thurston County v. Cooper Point Ass'n,* 148 Wash.2d 1, 12, 57 P.3d 1156 (2002). Therefore, the Court must give effect to the plain language of the regulation. *See Dep't of Licensing v. Cannon,* 147 Wash.2d 41, 56–57, 50 P.3d 627 (2002) ("If an administrative rule or regulation is clear on

its face, its meaning is to be derived from the plain language of the provision alone.... An unambiguous rule or regulation is not subject to judicial construction."). The plain language of WAC 296–127–011(4) clearly requires the Court to hold that the prevailing wage rate applicable to Plaintiff is that rate in effect when the O & M Contract was executed.

Plaintiff argues that the Court should not "enforce the literal words" of the regulation "to the point of absurdity." However, Plaintiff has not proposed an alternative reading of the regulation. Where a regulation is unambiguous and its meaning is plain on its face, the Court must give effect to that plain meaning. *City of Seattle*, 148 Wash.2d at 81, 59 P.3d 85. Therefore, the Court determines that under the plain meaning of WAC 296–127–011(4), the prevailing wage rate applicable to Plaintiff is the rate in effect on the date the O & M Contract was executed. Accordingly, Defendant's cross-motion for partial summary judgment is granted on this basis.

### 2. *Plaintiff's Rate of Pay*

Under the prevailing wage laws, the Washington Department of Labor and Industries determines each year, on a geographic basis, the prevailing wage rates for different job classifications. Defendant contends Plaintiff has been paid at or above the prevailing wage rate applicable to his job classification at all relevant times during his employment. To decide this issue involves two separate determinations: (1) the applicable job classification for Plaintiff's work; and (2) the rate of pay applicable to that classification(s).

Defendant acknowledges that Plaintiff's work does not fit exactly within any of the work descriptions promulgated by the Washington Department of Labor and Industries. However, Defendant asserts that from 2001–2003, the work Plaintiff performed at the SWDP is most consistent with the description of the work performed by a millwright in WAC 296–127–01351, a plumber/pipefitter in WAC 296–127–01364, and a boilermaker in WAC 296–127–01305. During oral arguments, Plaintiff's counsel acknowledged that these descriptions were the applicable Department of Labor and Industries job classifications for Plaintiff's work at the SWDP.

It is undisputed that since February 2001, Plaintiff has been paid at least $21.85 per hour. Therefore, the remaining issue is whether this wage is greater than or equal to the applicable prevailing wage rates in Spokane County for 1989. Defendant submitted two affidavits showing that the prevailing wage rates, in 1989, for a millwright, a plumber/pipefitter, and a boilermaker were less than $21.85. Plaintiff failed to direct the Court to specific facts creating a genuine issue of dispute precluding summary judgment on this issue. Therefore, the Court determines that Plaintiff has been paid at or above the applicable prevailing wage rate at all relevant time. Accordingly, Defendant's cross-motion for partial summary judgment is granted on this basis.

### D. *Meal Periods*

█ Plaintiff claims that as a matter of law he is entitled to over-time compensation (one and one-half times the regular hourly rate) for any meal periods during which he remained on-call between February 3, 2001 and April 1, 2004.[1] Defendant does not oppose the entry of summary

---

1. Although Plaintiff has been employed by Defendant since December 1998, Plaintiff only seeks compensation for unpaid meal periods between February 2001 and April 2004 because his claim is subject to a 3–year statute of limitation. *See* RCW 4.16.080(3); *SPEEA v. Boeing Co.*, 139 Wash.2d 824, 991 P.2d 1126 (2000).

judgment on the liability issue of whether it is required to compensate Plaintiff for any unpaid meal period during which he remained on-call during this period. However, Defendant does oppose summary judgment on the issue of whether Plaintiff is entitled to over-time compensation for those unpaid meal periods. In Plaintiff's reply memorandum, Plaintiff concedes that the issue of damages should be left for trial and only requests summary judgment on the liability issue. Accordingly, Plaintiff's motion for partial summary judgment on the issue of whether Defendant is obligated to compensate Plaintiff for his unpaid on-call meal periods is granted. The Court does not determine whether Plaintiff is entitled to receive overtime compensation for those unpaid meal periods because material questions of fact exist, precluding summary judgment on this issue.

### D. Double Damages

Plaintiff asserts that Defendant is liable for double damages under RCW 49.52.070 for Plaintiff's unpaid prevailing wages and unpaid on-call meal periods. RCW 49.52.070 provides:

> Any employer ... who shall violate any of the provisions of subdivisions (1) and (2) of RCW 49.52.050 shall be liable in a civil action by the aggrieved employee ... to judgment for twice the amount of the wages unlawfully rebated or withheld by way of exemplary damages, together with costs of suit and a reasonable sum for attorney's fees: PROVIDED, HOWEVER, that the benefits of this section shall not be available to any employee who has knowingly submitted to such violations.

RCW 49.52.050(2) provides:

> Any employer ... who ... [w]illfully and with intent to deprive the employee of any part of his wages, shall pay any employee a lower wage than the wage such employer is obligated to pay such employee by any statute, ordinance, or

contract...shall be guilty of a misdemeanor.

■ Pursuant to these statutes, double damages may be awarded to an employee for an employer's willful withholding of an employee's wages. The critical determination in a case for double damages under RCW 49.52.070 is whether the employer's failure to pay wages was "willful." *Schilling v. Radio Holdings, Inc.*, 136 Wash.2d 152, 159, 961 P.2d 371 (1998). "Willful means that the person knows what he is doing, intends to do what he is doing, and is a free agent." *Id.* at 159–60, 961 P.2d 371. Nonpayment of wages is willful when it is the result of a knowing and intentional action and not the result of a bona fide dispute as to the obligation of payment. *Id.* at 160, 961 P.2d 371; *see e.g., Chelan County Deputy Sheriffs' Ass'n. v. Chelan County*, 109 Wash.2d 282, 300–303, 745 P.2d 1 (1987) (declining to award double damages in a dispute over deputy on-call time payments). A "bona fide" dispute is one that is "fairly debatable" as to whether all or a portion of the wages must be paid. *Schilling*, 136 Wash.2d at 161, 961 P.2d 371. The determination of whether a bona fide dispute exists is a question of fact. *Chelan County*, 109 Wash.2d at 300–01, 745 P.2d 1; *see also Pope v. Univ. of Wash.*, 121 Wash.2d 479, 490, 852 P.2d 1055, (1993) (ordinarily, the issue of whether an employer acts willfully for purposes of RCW 49.52.070 is a question of fact), *cert. denied*, 510 U.S. 1115, 114 S.Ct. 1061, 127 L.Ed.2d 381 (1994).

### 1. Prevailing Wage

Plaintiff contends that Defendant is liable for double damages under RCW 49.52.070 for willfully failing to pay prevailing wages, in violation of RCW 49.52.050. However, since the Court determines that Plaintiff has been paid at or above the applicable prevailing wage at all relevant

times, the issue of damages is moot. Accordingly, Plaintiff's motion for partial summary judgment seeking double damages for unpaid prevailing wages is denied.

### 2. Meal Periods

Plaintiff also asserts that Defendant is liable for double damages under RCW 49.52.070 for willfully failing to pay his on-call meal periods, in violation of RCW 49.52.050. Defendant argues that a bona fide dispute exists regarding whether and to what extent it owes Plaintiff any additional compensation for his on-call meal periods.

Ordinarily, the existence of a bona fide dispute sufficient to preclude a finding of willfulness under RCW 49.52.070 is a question of fact. *Pope,* 121 Wash.2d at 490, 852 P.2d 1055. However, where as here, there is no dispute as to the material facts, the Court may resolve the issue on summary judgment. *Schilling,* 136 Wash.2d at 160, 961 P.2d 371 (citing Fed.R.Civ.P. 56©); *State v. Clark,* 129 Wash.2d at 211, 225, 916 P.2d 384 (1996) (when reasonable minds could reach but one conclusion from the evidence presented, questions of fact may be determined as a matter of law).

Plaintiff argues that there is no bona fide dispute concerning Defendant's obligation to pay Plaintiff's on-call meal periods because the law has been clear since the Washington Supreme Court's decision in *Weeks v. Chief of Washington State Patrol,* 96 Wash.2d 893, 639 P.2d 732 (1982). The *Weeks* Court held that lunch periods during which the Washington State Patrol deputies were required to remain on-call, by responding to a radio if necessary, constituted compensable work time even though they were allowed to go anywhere within the area of their beat during their lunch period. 96 Wash.2d at 897, 639 P.2d 732. Defendant attempts to distinguish the facts in this case from those in *Weeks.*

Defendant points to a memorandum relating to its meal period policy, which states that employees are relieved of their duties during their meal periods and that the employees may use that time for their own personal use. *See* Manson Aff., Ex. 2. However, the deputies in *Weeks* were also allowed to use their lunch period as they pleased. 96 Wash.2d at 894, 639 P.2d 732. The determining factor in *Weeks* was not whether the deputies were allowed to use their lunch hour as they saw fit, but that they had to remain on call by wearing their radio and responding to the radio if required. Here, like the deputies in *Weeks,* Defendant's employees must keep their radios on at all times during their meal periods. *See* Manson Aff., Ex.2. Defendant also attempts to distinguish its meal period policy from the policy in *Weeks* on the basis that Defendant's employees are compensated or receive another meal period in the event the employee is required to return to work prior to the end of his meal period. *Id.* However, the deputies in *Weeks* were also compensated if they were actually called out during their lunch period. 96 Wash.2d at 894, 639 P.2d 732.

The Court determines that the facts in this case are not distinguishable from those in *Weeks.* In light of that decision, the Court determines that during the time Plaintiff was employed by Defendant, no bona fide dispute ever existed as to Defendant's obligation to compensate Plaintiff for his on-call meal periods. Therefore, the Court finds that Defendant's failure to compensate Plaintiff for his on-call meal periods was willful. *See Schilling,* 136 Wash.2d at 160, 961 P.2d 371 (nonpayment of wages is willful when it is the result of a knowing and intentional action and not the result of a bona fide dispute as to the obligation of payment). Therefore, Defendant is liable to Plaintiff for double damages under RCW 49.52.070 for willfully

failing to pay Plaintiff's on-call meal periods, in violation of RCW 49.52.050. Accordingly, Plaintiff's motion for summary judgment is granted with respect to this issue. The exact amount of such damages will be determined at trial.

**IT IS HEREBY ORDERED:**

1. Plaintiff's Motion For Partial Summary Judgment, Ct. Rec. 7, is **GRANTED IN PART AND DENIED IN PART**:

2. Plaintiff's Motion for Partial Summary Judgment is **granted** with respect to the following:

   a. Plaintiff's claim that his work performed at the SWDP constitutes public work for which he is entitled to be paid prevailing wages;

   b. Plaintiff's claim that he is entitled to be compensated for his on-call meal periods; and

   c. Plaintiff's claim that Defendant is liable for double damages for willfully failing to pay Plaintiff's on-call meal periods.

3. Plaintiff's Motion for Partial Summary Judgment is **denied** with respect to the following;

   a. Plaintiff's claim that he is entitled to double damages for unpaid prevailing wages.

4. Defendant's Cross–Motion For Partial Summary Judgment, Ct. Rec. 16, is **GRANTED**:

   a. Defendant's claim that the applicable prevailing wage rate for Plaintiff is the rate in effect on the date the O & M Contract was executed in 1989;

   b. Defendant's claim that it has paid Plaintiff at or above the applicable prevailing wage rate at all relevant times during Plaintiff's employment.

**IT IS SO ORDERED.** The District Court Executive is hereby directed to enter this order and furnish copies to counsel.