[No. 19681-6-II. Division Two. December 6, 1996.]

SUPERIOR ASPHALT & CONCRETE COMPANY, *Appellant*,
v. THE DEPARTMENT OF LABOR & INDUSTRIES, ET AL.,
*Respondents.*

*Ryan M. Edgley* and *Halverson & Applegate, P.S.*, for appellant.

*Christine O. Gregoire, Attorney General,* and *Jeff B. Kray, Assistant*, for respondents.

SEINFELD, C.J. — Superior Asphalt & Concrete Company asks the court to invalidate WAC 296-127-018 in this action for declaratory and injunctive relief. The challenged WAC requires contractors to pay the prevailing wage to their employees who deliver "materials to a public works project site and perform any spreading, leveling, rolling, or otherwise participate in any incorporation of the materials into the project." WAC 296-127-018(2)(a) . As the regulation does not modify, amend, or contradict RCW 39.12, the prevailing wage statute, we affirm the summary judgment for the Department of Labor and Industries (L&I).

I

Superior delivers sand, dirt, gravel, and crushed rock to private and public customers. Sometimes these deliveries involve dumping the material from the truck as the truck

moves along the site (referred to as a "tailgate" delivery). L&I adopted WAC 296-127-018, effective August 31, 1992, but has not yet enforced it. Superior believes, however, that L&I intends to apply the regulation to tailgate deliveries, thereby requiring it to pay the prevailing wage to its employees who engage in this activity.

In its petition for declaratory and injunctive relief, Superior alleges that L&I exceeded its authority in adopting the WAC. And in its motion for summary judgment, Superior asked the superior court to declare the WAC invalid as a matter of law on the bases that it unlawfully amends RCW 39.12; that it is inconsistent with legislative intent; that L&I lacked authority to adopt the WAC; and that "constitutional requirements were not satisfied." The trial court disagreed, finding the regulation consistent with the prevailing wage statute and its adoption within L&I's rule-making authority. Consequently, the court denied Superior's motion for summary judgment and granted summary judgment for L&I.

Much of Superior's argument below and on appeal focuses on whether its employees who make tailgate deliveries are covered by the prevailing wage statute. In its motion for summary judgment, however, Superior did not seek a ruling on this question. Rather, it simply challenged the WAC provision. Thus, we limit our review to the language of the WAC, considered in light of RCW 39.12.

## II

■■ Summary judgment is available only if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). The parties here do not dispute the facts; the sole issue is the proper interpretation of the law. Consequently, review is de novo. *Jefferson County v. Seattle Yacht Club*, 73 Wn. App. 576, 588, 870 P.2d 987, *review denied*, 124 Wn.2d 1029 (1994). This requires us to engage in the same inquiry as the trial court. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).

■■ In conducting our review, we accord substantial weight to the agency's legal interpretation to the extent that it falls within the agency's expertise in a special area of the law. *Jefferson County*, 73 Wn. App. at 588. Determination of the prevailing wage rate involves "utilization of the specialized knowledge and judgment of the director of the Department of Labor and Industries." *Southeastern Wash. Bldg. & Constr. Trades Council v. Department of Labor & Indus.*, 91 Wn.2d 41, 47, 586 P.2d 486 (1978). Thus, we give deference to L&I's interpretation.

■ We will invalidate a regulation if it is in conflict with the intent and purpose of the legislation or exceeds the agency's statutory authority. *Multicare Med. Ctr. v. Department of Soc. & Health Servs.*, 114 Wn.2d 572, 589, 790 P.2d 124 (1990); *Hi-Starr, Inc. v. Liquor Control Bd.*, 106 Wn.2d 455, 459, 722 P.2d 808 (1986); RCW 34.05-.570(2)(c). An administrative agency may not adopt a regulation that effectively modifies or amends a statute. *Bird-Johnson Corp. v. Dana Corp.*, 119 Wn.2d 423, 428, 833 P.2d 375 (1992). But the party seeking to overturn the regulation bears the burden of proof. RCW 34.05.570(1)(a).

RCW 39.12.020 requires payment of the prevailing wage to all those who work "upon" a public works project. It states in part:

> The hourly wages to be paid to laborers, workers, or mechanics, *upon all public works . . .* shall be not less than the prevailing rate of wage for an hour's work in the same trade or occupation in the locality within the state where such labor is performed.

(Emphasis added.)

WAC 296-127-018 describes a situation when a worker is "upon" a public work and, thus, entitled to a prevailing wage. It provides:

> **Coverage and exemptions of workers involved in the production and delivery of gravel, concrete, asphalt, or similar materials.** The materials covered under this section are sand, gravel, crushed rock, concrete mix, asphalt, or other similar materials.

. . . .

(2) All workers, regardless of by whom employed, are subject to the provisions of chapter 39.12 RCW when:

(a) They deliver any of the above-listed materials to a public works project site and perform any spreading, leveling, rolling, or otherwise participate in any incorporation of the materials into the project.

Superior contends that WAC 296-127-018 requires payment of the prevailing wage in circumstances not covered by RCW 39.12, specifically for tailgate deliveries. Although we agree with Superior that its allegations regarding tailgate deliveries as well as any other hypothetical facts that come to mind are helpful in establishing a "conceptual backdrop" of the issues, the issue before us is the validity of the WAC, not the validity of its application to a particular factual situation. Thus, we consider Superior's challenge by reviewing the meaning of the statutory phrase "upon all public works."

 In determining the scope of a statute, we first look to the relevant statutory language. *Everett Concrete Prods., Inc. v. Department of Labor & Indus.*, 109 Wn.2d 819, 821, 748 P.2d 1112 (1988). When reviewing an unambiguous statute, we determine its meaning from the statutory language alone; if a statute is ambiguous, we may look to other sources. *Everett*, 109 Wn.2d at 822.

 RCW 39.12 does not provide a definition of the phrase "upon all public works." Thus, we must look to other sources to determine the meaning. In doing so, we must construe the prevailing wage statute liberally to carry out its purposes. *Everett*, 109 Wn.2d at 823.

 The prevailing wage statute has two purposes: to protect employees working on public projects from substandard wages and to preserve local wages. *Everett*, 109 Wn.2d at 823. Accordingly, the worker, not the contractor, is the intended beneficiary of the act. *Everett*, 109 Wn.2d at 823. A broad reading of the term "upon" a public work would best satisfy this purpose.

Nor is there a question as to whether the Washington prevailing wage law may cover suppliers in some circumstances. *Everett,* 109 Wn.2d at 829. The statute covers persons other than employees of contractors and subcontractors if those persons are doing or contracted to do any part of the work contemplated by the public works contract and the work is "required for such public work." RCW 39.12.030; *Everett,* 109 Wn.2d at 829 (employees of off-site manufacturer of items specifically designed for a public work project entitled to prevailing wage). It is within the contemplation of public works contracts that gravel crushing operations be a part of the work. RCW 39.12.020. The statute specifically provides for a posting of a statement of intent to pay prevailing wages at such facilities.

Superior does not claim that the work of "incorporating materials into a public work" is not contemplated by and necessary to a public work contract for road construction. Instead, it contends the WAC covers tailgate deliveries but the statute does not. As authority, Superior cites *Sparks & Wiewel Constr. Co. v. Martin,* 250 Ill. App. 3d 955, 620 N.E.2d 533, *appeal denied,* 153 Ill. 2d 570, 624 N.E.2d 817 (1993).

Sparks challenged the Illinois Department of Labor's ruling that employees of trucking companies who delivered materials to public works projects were covered by the Illinois Prevailing Wage Act. The act covered only those

> laborers, workers and mechanics employed by or on behalf of any public body engaged in the construction of public works. *Only such laborers, workers and mechanics as are directly employed by contractors or subcontractors in actual construction work on the site of the building or construction job. . . shall be deemed to be employed upon public works.*

*Sparks,* 620 N.E.2d at 538-39 (quoting ILL. REV. STAT. 1991, ch. 48, par. 39s-3).

Sparks's truck drivers drove the trucks onto the construction site and unloaded the material where it

would be used; they did not leave their vehicles during the unloading process. *Sparks*, 620 N.E.2d 533 at 541. The *Sparks* court held that Sparks's drivers did not engage "in actual construction work on the site" and thus were exempt under the plain meaning of the statute. *Sparks*, 620 N.E.2d at 541.

> The fact they dumped the material where it would be used is not dispositive. They did not perform actual construction work on the site of the construction project. Rather, any "spreading" done by them was a result of the unloading process and was the final act of unloading; they did not get out of their trucks and spread the material; all handling of the material was done by other workers on the project.

*Sparks*, 620 N.E.2d at 541.

The reasoning in *Sparks* is not persuasive here. The significant difference between the Illinois statute and Washington law makes it clearly distinguishable. Washington law looks to whether the work is "upon" a public work; Illinois law considers whether the worker is engaged "in actual construction work on the site." Further, WAC 296--127-018 is not necessarily inconsistent with *Sparks;* it does not purport to cover employees of suppliers who merely make deliveries.

A different analysis is used in two cases cited by L&I. In *Green v. Jones*, 23 Wis. 2d 551, 128 N.W.2d 1 (1964), truck driver employees of W. J. Jones Company claimed that Jones failed to pay them the minimum wage required by statute. The drivers delivered construction materials to road projects. In some situations, the drivers dumped the material on the highway surface for immediate grading and leveling by the contractor's employees. At other times, the drivers would actually spread the materials under the supervision of the contractor's employees. *Green*, 128 N.W.2d at 2.

The *Green* court was called upon to decide "[w]hat operations are part of 'work under a contract' for highway improvement." *Green*, 128 N.W.2d at 6 (quoting 38 Op.

Att'y Gen. 481 at 483). In determining the suppliers' involvement, the *Green* court considered the functions performed by the supplier's employees in connection with the public work. It held there was coverage in the situation where:

> Clearly, the materials were applied to the process of highway improvement, almost immediately after the drivers arrived at the site. The delivery of materials was an integrated aspect of the "flow" process of construction. The materials were "distributed over the surface of the roadway" with no "rehandling" out of the flow of construction. The drivers were "executing such highway improvement" and hence performing "work under the contract."

*Green*, 128 N.W.2d at 7.

L&I's second case, *Construction Indus. of Mass. v. Commissioner of Labor & Indus.*, 406 Mass. 162, 546 N.E.2d 367 (1989), raised a question about coverage for truck drivers who delivered asphalt[1] to public works projects. At the site, the driver dumped his load of asphalt into a spreader, which laid the asphalt down evenly on the road surface. *Construction Indus.*, 546 N.E.2d at 369. During the dumping and spreading, the spreader operator and the job foreman gave directions to the driver. *Construction Indus.*, 546 N.E.2d at 369.

The parties disputed whether the drivers engaged in work on the construction site. The drivers' employer contended that it acted merely as a materialman and, thus, the statute did not apply. *Construction Indus.*, 546 N.E.2d at 371. Framing the question as simply "What do they [the truck drivers] do at the site?", the court concluded that:

> The [asphalt] truck drivers are an integral part of the road construction process. Not only do they spend a great deal of time at the site, but they work with the road crew to spread the [asphalt]. The truck drivers cooperate with the workers

---

[1]The case refers to "bituminous concrete." This substance is commonly known as asphalt. *Construction Indus.*, 546 N.E.2d at 369.

at the site in applying the [asphalt] to the road surface. Their activities are an essential part of the work done at the site. In our view, the truck drivers are more than just "material-men."

*Construction Indus.*, 546 N.E.2d at 371.

The coverage question in the above cited cases turns on the particular activities engaged in by truck drivers who bring supplies to a public worksite. The opinions do not suggest that the language of the Washington statute requiring coverage of workers "upon all public works" is not broad enough to cover workers who deliver materials to a public works project "*and perform any spreading, leveling, rolling*" or otherwise incorporate "the materials into the project." Further, the regulation at hand does not state that mere delivery triggers coverage; the worker must perform some additional task upon the public work.

We conclude that the reference to workers "upon all public works" in RCW 39.12.020 is sufficiently broad to encompass contract workers who deliver materials to a public worksite and spread, level, roll, or otherwise incorporate those materials into the project. WAC 296-127-018. The regulation is consistent with the prevailing wage law statute and with its purposes.

We recognize that this decision leaves open the question regarding whether the WAC encompasses tailgating. The answer to that question, however, must await another day and another court that has the evidence and the issue squarely before it. In light of the regulation's presumption of validity, Superior has failed to carry its burden of showing a conflict between the regulation and the statute. Thus, we affirm the trial court.

BRIDGEWATER and ARMSTRONG, JJ., concur.

Reconsideration denied January 10, 1997.

Review denied at 132 Wn.2d 1009 (1997).