154 P.3d 891 (2007)
SILVERSTREAK, INC.; T-Max Construction; Stowe Construction; Gary McCann Trucking; and Buckley Recycling, Respondents,
v.
WASHINGTON STATE DEPARTMENT OF LABOR AND INDUSTRIES, Petitioner.
No. 76695-9.
Supreme Court of Washington, En Banc.
Argued January 24, 2006.
Decided March 29, 2007.
*895 Anastasia R. Sandstrom, Amanda J. Goss, Attorney General's Office, Seattle, WA, for Petitioner.
John P. Ahlers, Ahlers & Cressman PLLC, Anne-Marie E. Sargent, Connor & Sargent PLLC, Seattle, WA, for Respondents.
Lawrence H. Vance, Jr, Winston & Cashatt, Spokane, for Amicus Curiae Associated General Contractors of Wash., The Inland Northwest Associated General Contractors.
Dmitri L. Iglitzin, Schwerin Campbell Barnard & Iglitzin LLP, Seattle, for Amicus Curiae General Teamsters Union Local No. 174.
ALEXANDER, C.J.
¶ 1 In this case, we are asked to determine whether a group of workers who drove end-dump trucks for the respondents, five suppliers of fill materials (Suppliers), on the first phase of construction of a runway at Sea-Tac Airport is entitled to be paid prevailing *896 wages.[1] Division One of the Court of Appeals concluded that the end-dump truck drivers' activities at the work site did not involve participation in the incorporation of the delivered materials into the project under construction. Thus, the Court of Appeals held that the workers did not qualify to be paid prevailing wages under Washington's prevailing wage act and the governing regulation, WAC 296-127-018.
¶ 2 We hold that the Court of Appeals erred in applying the canon of ejusdem generis to limit the scope of the prevailing wage act's coverage to only those activities similar to spreading, leveling, or rolling. Consequently, we uphold the Department of Labor and Industries' (the Department) broader construction of the governing regulation and conclude that the end-dump truck drivers did participate in the incorporation of fill material into the project. However, because the Department's present position on the applicability of the prevailing wage act to the end-dump truck drivers' activities is inconsistent with the position it adopted in its 1992 policy memorandum and with subsequent representations it made to the Suppliers, we conclude that the Department is estopped from enforcing its order. Therefore, we affirm, though on different grounds, the Court of Appeals' determination that the end-dump truck drivers employed by the Suppliers are not entitled to prevailing wages.

FACTS AND PROCEDURAL HISTORY
¶ 3 This case stems from work performed between May and December 1998 at the Sea-Tac third runway embankment (the Third Runway Project). The project involved construction of an embankment, using roughly 800,000 cubic yards of delivered fill material. City Transfer of Kent, Inc. (CTI) bid on the project, assuming payment of market wages for end-dump truck drivers.[2] After being awarded the contract, CTI contracted with Suppliers to supply and deliver fill materials for the embankment. Suppliers paid all of their end-dump truck drivers market wages for delivering the fill.
¶ 4 In preparing their bid, Suppliers relied upon a 1992 department policy memorandum on "Delivery of Materials Under WAC 296-127-018," which explains which dumping activities trigger the requirements of the prevailing wage act. Administrative Record (AR) at 2372. Suppliers also insist they relied upon oral representations made by the head of the prevailing wage section of the Department concerning which dumping activities trigger prevailing wage requirements. Subsection (4) of the department policy memorandum provides, in pertinent part: "Delivery of materials using a method in which the truck does not roll while the material is placed, or rolls only enough distance to allow the materials to exit the truck, does not include incorporation of the materials into the job site." Id.
¶ 5 Roughly one year after completion of the project and after Suppliers had been paid, the Department issued a notice of violation under RCW 39.12.020, part of Washington's prevailing wage act, along with a letter stating that prevailing wages were owed to the end-dump truck drivers.
¶ 6 The prevailing wage act requires payment of prevailing wages for work "upon all public works." RCW 39.12.020. Prevailing wages are not based upon competitive prices of the marketplace, but are instead calculated by the Department as equal to the (higher) wages paid in the largest city of the county here, Seattle. RCW 39.12.010(2). In this case, the difference between "prevailing *897 wage" and wages actually paid to the end-dump truck drivers was approximately $500,000. Suppliers appealed the Department's violation notice administratively.
¶ 7 The administrative law judge held that the end-dump truck drivers were not entitled to prevailing wages because their method of delivery did not amount to "incorporation" as that term is used in WAC 296-127-018. The administrative law judge found that the end-dump truck drivers' activity was carefully orchestrated by CTI's employees to minimize their time on the site, and "amounted to nothing more than a method of delivery." AR at 3335. The Department appealed to the Department Director (Director).
¶ 8 The Director reversed, holding that the end-dump truck drivers were entitled to prevailing wages. The Director concluded that the end-dump truck drivers participated in incorporation of the fill materials into the project when they deposited the fill material directly onto the project site, rather than to a stockpile, at the direction of CTI employees who were blading and spreading the deposited fill materials. The Director also concluded that the drivers compacted fill materials by driving over the project site as they entered and exited. Each of these conclusions qualified the drivers for prevailing wages. Suppliers appealed to King County Superior Court.
¶ 9 The superior court reversed the Director's conclusion that the drivers compacted the fill materials by merely driving over them.[3] The superior court did, however, sustain the Director's determination that the end-dump truck drivers required prevailing wages because they participated in the incorporation of fill materials into the project by dumping the fill directly onto the embankment, "resulting in greater efficiencies and cost savings." Clerk's Papers (CP) at 2. Suppliers appealed the superior court's latter ruling to the Court of Appeals.
¶ 10 Division One of that court reversed, holding that delivering fill materials directly onto the work under construction does not amount to "participat[ion] in any incorporation" as that phrase is used in WAC 296-127-018(2)(a). See Silverstreak, Inc. v. Dep't of Labor & Indus., 125 Wash.App. 202, 211-14, 104 P.3d 699, review granted, 155 Wash.2d 1001, 122 P.3d 185 (2005). It reasoned that "proper interpretation of the governing regulation requires that the participation of end-dump truck drivers in the incorporation of fill must be similar to one or more of the[] three limiting terms [in WAC 296-127-018(2)(a)]": spreading, leveling, or rolling. Id. at 213, 104 P.3d 699. The Court of Appeals noted there was no dispute that the end-dump truck drivers' activities consisted solely of dumping fill while remaining inside their trucks, they were on-site for approximately 5 to 15 minutes per delivery, and the fill was delivered directly onto the embankment. These actions, it ruled, did not constitute participation in the incorporation of the materials by means of spreading, leveling, rolling, or any similar activity. Id. at 217, 104 P.3d 699 ("We conclude that the activities here do not exceed the `mere delivery' limitation defined by case authority and plainly indicated by the text of the regulation at issue here.").
¶ 11 As a result of that holding, the Court of Appeals declined to reach Suppliers' claim that the Department should be estopped from requiring payment of the higher "prevailing wage" due to its 1992 policy memorandum and representations made by the wage division head prior to the Suppliers' bid. That court also denied Suppliers' request for attorney fees, finding the Department's actions reasonable and substantially justified. Suppliers were, however, awarded costs, to which the Department conceded they were entitled.
¶ 12 The Department sought review by this court. We granted its petition and also agreed to hear Suppliers' equitable estoppel claim and its request for fees on appeal.

STANDARD OF REVIEW
¶ 13 The Washington Administrative Procedure Act (WAPA), chapter 34.05 RCW, *898 governs review of a final decision by the director of a department. RCW 34.05.510. A party will be afforded relief from an adverse administrative decision when the law is erroneously interpreted or applied by the agency or when the order is not supported by substantial evidence on the record. RCW 34.05.570(3)(d)-(e). In reviewing an administrative decision, this court sits in the same position as the Court of Appeals and the superior court, applying the WAPA standards directly to the record considered by the agency. Tapper v. Employment Sec. Dep't, 122 Wash.2d 397, 402, 858 P.2d 494 (1993). An agency's findings of fact and its regulatory interpretations are granted deference. Everett Concrete Prods., Inc. v. Dep't of Labor & Indus., 109 Wash.2d 819, 823, 748 P.2d 1112 (1988). However, questions of law are reviewed de novo. Whether the law was correctly applied to the facts as found by the agency is also a question of law that we review de novo. Tapper, 122 Wash.2d at 403, 858 P.2d 494.

ANALYSIS
A. Prevailing Wages and WAC 296-127-018
¶ 14 The prevailing wage act provides that "[t]he hourly wages to be paid to laborers, workers, or mechanics, upon all public works . . . of the state or any . . . political subdivision . . . shall be not less than the prevailing rate of wage for an hour's work in the same trade or occupation in the locality within the state where such labor is performed." RCW 39.12.020.[4] The prevailing wage act was designed to protect employees on public works projects and preserve local wages. Heller v. McClure & Sons, Inc., 92 Wash.App. 333, 338, 963 P.2d 923 (1998) (citing Everett Concrete, 109 Wash.2d at 823, 748 P.2d 1112). Thus, "it is the worker, not the contractor, who is the intended beneficiary of the" act. Id.
¶ 15 The Department has adopted regulations to further define the applicability of the prevailing wage act to delivery of materials to public projects. These regulations provide, in pertinent part:
All workers . . . are subject to the provisions of [the prevailing wage act] when:
(a) They deliver . . . materials to a public works project site and perform any spreading, leveling, rolling, or otherwise participate in any incorporation of the materials into the project.
WAC 296-127-018(2)(a).
¶ 16 Workers are not subject to the provisions of [the act] when:
. . . .
(b) . . . the employees' duties do not include spreading, leveling, rolling, or otherwise participating in the incorporation of the delivered materials into a public works project. . . .
WAC 296-127-018(3)(b).
1. Interpreting WAC 296-127-018
¶ 17 As in statutory interpretation, where a regulation is clear and unambiguous, words in a regulation are given their plain and ordinary meaning unless a contrary intent appears. In re Estate of Little, 106 Wash.2d 269, 283, 721 P.2d 950 (1986); Hewson Constr., Inc. v. Reintree Corp., 101 Wash.2d 819, 826, 685 P.2d 1062 (1984). The plain language of WAC 296-127-018 requires that two conditions be satisfied before prevailing wages must be paid. First, the drivers must deliver fill materials to a public works site. Second, the drivers must perform an additional task that involves incorporation of the materials into the project. The WAC gives examples of such "incorporation": "spreading, leveling, rolling, or otherwise participating in the incorporation of the delivered materials." WAC 296-127-018(3)(a). Mere delivery by drivers of fill materials to a public works project does not trigger the prevailing wage requirements. Superior Asphalt & Concrete Co. v. Dep't of Labor & Indus., 112 Wash.App. 291, 299-300, 49 P.3d 135 (2002) (Superior II); Superior Asphalt & Concrete Co. v. Dep't of Labor & Indus., 84 Wash.App. 401, 405-06, 410, 929 P.2d 1120 (1996) (Superior I).
*899 ¶ 18 It is undisputed that the Third Runway Project is a public works project. In addition, both parties agree that a plain reading of WAC 296-127-018 requires payment of prevailing wages to delivery drivers who perform an additional task involving incorporation of the delivered fill into the project. Neither party claims that the end-dump truck drivers in this case engaged in spreading, leveling, or rolling. However, the Department and Suppliers disagree on how the phrase "or otherwise participate in any incorporation of the materials into the project" is to be read.
¶ 19 When we apply basic statutory construction principles, our primary task is to determine which interpretation best reflects the intent of the legislature in enacting the prevailing wage act and to give effect to that interpretation. Scoccolo Constr., Inc. v. City of Renton, 158 Wash.2d 506, 515, 145 P.3d 371 (2006) (citing Nat'l Elec. Contractors Ass'n v. Riveland, 138 Wash.2d 9, 19, 978 P.2d 481 (1999)); see also Campbell v. Dep't of Soc. & Health Servs., 150 Wash.2d 881, 83 P.3d 999 (2004). As noted above, the prevailing wage act is remedial legislation designed to protect the employees of government contractors in this state from substandard earnings and to preserve local wage standards. See Everett Concrete, 109 Wash.2d at 823, 748 P.2d 1112. As such, the act and regulations promulgated thereunder are to be liberally construed in favor of the beneficiary of the act, the worker. See id. at 823-24, 748 P.2d 1112; see also Superior II, 112 Wash.App. at 297, 49 P.3d 135. Exemptions from remedial legislation are to be narrowly construed in a manner that is consistent with the terms and spirit of that legislation. Drinkwitz v. Alliant Techsystems, Inc., 140 Wash.2d 291, 301, 996 P.2d 582 (2000) (citing Knecht v. City of Redwood City, 683 F.Supp. 1307, 1310 (N.D.Cal.1987)).
¶ 20 The Court of Appeals applied the canon of ejusdem generis in limiting the scope of prevailing wage coverage here. The rule of ejusdem generis requires that general terms appearing in a statute in connection with specific terms are to be given meaning and effect only to the extent that the general terms suggest similar items to those designated by the specific terms. Davis v. Dep't of Licensing, 137 Wash.2d 957, 970, 977 P.2d 554 (1999); Dean v. McFarland, 81 Wash.2d 215, 221, 500 P.2d 1244 (1972). "`[S]pecific terms modify or restrict the application of general terms, where both are used in sequence.'" Davis, 137 Wash.2d at 970, 977 P.2d 554 (quoting McFarland, 81 Wash.2d at 221, 500 P.2d 1244); see also In re Estate of Jones, 152 Wash.2d 1, 11, 93 P.3d 147 (2004). Thus, the Court of Appeals concluded that the specific terms "spreading," "leveling," and "rolling" limited the meaning of the phrase "or otherwise participate in any incorporation of the materials into the project" to only activities similar to spreading, leveling, or rolling.
¶ 21 However, the ejusdem generis rule is to be employed to support the "`legislative intent in the context of the whole statute and its general purpose.'" City of Seattle v. State, 136 Wash.2d 693, 701, 965 P.2d 619 (1998) (quoting Cherry v. Mun. of Metro. Seattle, 116 Wash.2d 794, 800, 808 P.2d 746 (1991)). The Court of Appeals' use of the rule in this case does not, in our view, advance the intent of the legislature in passing RCW 39.12.020. We say that because application of the canon here would serve to exclude a number of workers from the protection of the prevailing wage act. It would allow some dump truck drivers to be paid significantly lower wages, even though they participate to the same extent as others in the public works project, so long as that participation is not similar to spreading, leveling, or rolling. This works to undermine the legislature's intent to protect workers.[5]
¶ 22 Furthermore, application of the ejusdem generis rule in this case could produce exactly the sort of decrease in local wages that the prevailing wage act was designed to prevent. Since government contracts are awarded to the lowest bidder, allowing some drivers to be paid less for an equivalent amount of work provides a tempting opportunity *900 for general contractors to cut costs in order to underbid competitors. See Heller, 92 Wash.App. at 338, 963 P.2d 923. The careful dictation of drivers' activities in this case, designed to use them as much as possible without having to pay prevailing wages, suggests that contractors might be willing to take advantage of such a loophole. This would force local dump truck drivers to accept lower wages or forgo working on government contracts. Thus, the Court of Appeals' use of the ejusdem generis rule supports neither of the legislative purposes behind the prevailing wage act.
¶ 23 This inequitable result arises because the appeals court reads the word "otherwise" out of WAC 296-127-018. "Otherwise" is defined as "in another way; differently; in another respect." Scribner-Bantom English Dictionary 641 (1977). The Court of Appeals' reading violates the principle that a reviewing court has a duty to give meaning to every word in a regulation. Accord City of Seattle v. Williams, 128 Wash.2d 341, 349, 908 P.2d 359 (1995) (analyzing the words of statutes).
¶ 24 To avoid such a construction, we have previously ruled ejusdem generis inapplicable to statutes where general words, such as "or otherwise," clearly "`were intended to include something more than specific descriptive words preceding.'" McMurray v. Sec. Bank of Lynnwood, 64 Wash.2d 708, 714, 393 P.2d 960 (1964) (construing the phrase "`through transfer of stock ownership, sale of assets' . . . `or otherwise'" in a statute (quoting Republic Inv. Co. v. Naches Hotel Co., 190 Wash. 176, 182, 67 P.2d 858 (1937))). WAC 296-127-018(2)(a) contains a phrase similar to the general words examined in McMurray: "or otherwise participat[ing]." Just as we recognized in McMurray that the words "or otherwise" expanded the reach of the statute to any other form of sale or conversion besides those enumerated, 64 Wash.2d at 714, 393 P.2d 960, the words "or otherwise participated" expand the coverage of the prevailing wage act to workers who participate in incorporating materials into the project in any way besides the three enumerated. The Court of Appeals erred in applying ejusdem generis to this case to find otherwise.
¶ 25 The Court of Appeals also failed to accord the proper weight to the Department's interpretation of its own properly promulgated regulation. This court has made clear that we will give great deference to an agency's interpretation of its own properly promulgated regulations, "absent a compelling indication" that the agency's regulatory interpretation conflicts with legislative intent or is in excess of the agency's authority. Marquis v. City of Spokane, 130 Wash.2d 97, 111, 922 P.2d 43 (1996); see also Port of Seattle v. Pollution Control Hearings Bd., 151 Wash.2d 568, 593, 90 P.3d 659 (2004); Everett Concrete, 109 Wash.2d at 823, 748 P.2d 1112. We give this high level of deference to an agency's interpretation of its regulations because the agency has expertise and insight gained from administering the regulation that we, as the reviewing court, do not possess. Port of Seattle, 151 Wash.2d at 593, 90 P.3d 659; Lockheed Shipbuilding Co. v. Dep't of Labor & Indus., 56 Wash.App. 421, 429-30, 783 P.2d 1119 (1989). Because the Department's interpretation of WAC 296-127-018 neither conflicts with legislative intent nor exceeds the scope of its authority, it should be given proper deference here.
¶ 26 The Department Director broadly interpreted the phrase "or otherwise participate in any incorporation of the materials" to encompass a worker whose participation is "`directly related to the prosecution of the work'" and who is "`necessary for the completion of that work.'" AR at 3347 (quoting Heller, 92 Wash. App. at 337, 963 P.2d 923). In order to determine whether the drivers in this case met that standard, the Department Director applied factors identified by the courts in Heller and Superior II as material to evaluating the scope of prevailing wage coverage.[6]
¶ 27 The Court of Appeals rejected this interpretation because the factors used are *901 not expressly laid out in the regulation. The Court of Appeals pointed out that "L & I could have written a more expansive regulation" that instructed courts to look at factors such as those in Heller and Superior II or that clearly required payment of prevailing wages in this situation. Silverstreak, 125 Wash.App. at 217, 104 P.3d 699. We hold that the Court of Appeals' conclusion in this regard is untenable. We do so because it represents a substitution of a reviewing court's judgment for that of the agency tasked with administering the prevailing wage act. Courts have adopted many tests over time that are not laid out in the applicable statute or regulations; instead, those tests are useful tools for determining whether the standard set out in the statute or regulation has been met in a given situation. The Department Director used factors previously identified by the courts in similar cases to help define the boundaries of the prevailing wage requirements under WAC 296-127-018. We defer to the Department's expertise.
¶ 28 With the foregoing in mind, we conclude that the Department's more expansive reading of the phrase "or otherwise participate in any incorporation of the materials into the project" should control our analysis in this case. Activities by the end-dump truck drivers not akin to spreading, rolling, and leveling can represent an additional task on the project and, thus, may constitute "participat[ion] in . . . incorporation of the materials" as that general phrase is used in WAC 296-127-018(2)(a).
2. Application of WAC 296-127-018
¶ 29 The record in this case contains substantial evidence for holding that the drivers' activities amounted to more than "mere delivery." Under Superior II and Heller, the drivers' acts of delivering the fill directly onto the runway embankment, rather than to a central stockpile, when combined with the drivers' coordinated work with those who were blading and spreading the material as it was deposited along various points of the embankment, constitute participation in incorporation of the fill into the work site. Accordingly, we affirm the Department Director's determination that the end-dump truck drivers on the Third Runway Project participated in incorporation of the fill materials into the project.
B. Estoppel
¶ 30 Although we uphold the Department Director's broad reading of WAC 296-127-018 and the finding that the drivers participated in incorporation of the fill materials, the interests of justice prevent us from upholding the Department's order applying these determinations retroactively to Suppliers. We hold that all elements of equitable estoppel are met and that, therefore, the Department is estopped in this case from claims contrary to its policy memorandum position.
¶ 31 Equitable estoppel prevents a party from taking a position inconsistent with a previous one where inequitable consequences would result to a party who has justifiably and in good faith relied. Kramarevcky v. Dep't of Soc. & Health Servs., 122 Wash.2d 738, 743, 863 P.2d 535 (1993); Wilson v. Westinghouse Elec. Corp., 85 Wash.2d 78, 81, 530 P.2d 298 (1975). When equitable estoppel is asserted against the government, the party asserting estoppel must establish five elements by clear, cogent, and convincing evidence: (1) a statement, admission, or act by the party to be estopped, which is inconsistent with its later claims, (2) the asserting party acted in reliance upon the statement or action, (3) injury would result to the asserting party if the other party were allowed to repudiate its prior statement or action, (4) estoppel is "necessary to prevent a manifest injustice," and (5) estoppel will not impair governmental functions. Kramarevcky, 122 Wash.2d at 743, 863 P.2d 535.
¶ 32 Central to respondents' estoppel claim is the Department's 1992 policy memorandum. Subsection (4) of the policy memorandum reads: "Delivery of materials using a method in which the truck does not roll while the material is placed, or rolls only enough distance to allow the materials to exit the truck, does not include incorporation of the materials into the job site." AR at 2372. The record shows that before CTI and the Suppliers bid on the Third Runway *902 Project, CTI's vice-president contacted the Department and spoke with the head of its prevailing wage section, Jim Christenson.[7] Christenson sent CTI the department policy memorandum. Suppliers claim that Christenson also made verbal representations similar to those in the memorandum. CTI provided the policy memorandum to Suppliers before bids were submitted. It is not disputed by the Department that its new litigating position is contrary to the 1992 policy memorandum.
¶ 33 The administrative law judge rejected the estoppel argument essentially for what he concluded was a lack of reasonable reliance. The administrative law judge noted that Suppliers did not contact the Department directly and concluded the contact between CTI and Christenson was "insufficient to create a duty of the Department" upon which Suppliers could rely regarding the Department's interpretations of "the activities occurring in connection with the Third Runway Project." AR at 3337.
¶ 34 We reject the administrative law judge's determination. Although the Department did not provide the memorandum directly to Suppliers, this is not dispositive. The 1992 department policy memorandum was a publicly available statement of department policy implementing WAC 296-127-018 and interpreting which activities the Department held covered by the terms "or otherwise participate in any incorporation of the materials." Significantly, the Department sent the policy memorandum to bidders on the Third Runway Project, a group that included Suppliers, expressly holding out the memorandum as its position on whether the method of delivery employed in this case would entitle the end-dump truck drivers to prevailing wages. Furthermore, the Department policy memorandum was adopted nearly contemporaneously with the promulgation of WAC 296-127-018 (and by the same Director), rendering it more authoritative. The Department never repudiated this memorandum until the claims that are the subject of the instant action were made. Thus, it was entirely reasonable for Suppliers to rely upon the department policy memorandum.
¶ 35 The record amply demonstrates such reliance, made in good faith. Suppliers bid hundreds of thousands of dollars less on their subcontracts than they would have had they believed higher "prevailing wages" were required. They accepted payment in the amount of their bid, before the Department attempted to redefine the coverage of WAC 296-127-018. The public would have paid more for this work if Suppliers had not believed the Department's interpretation of WAC 296-127-018 excluded their end-dump truck drivers from prevailing wage requirements.
¶ 36 In Washington, the "injury" element requires the party asserting equitable estoppel to show a detrimental change of position based upon the government's representation. See State ex rel. Shannon v. Sponburgh, 66 Wash.2d 135, 143-44, 401 P.2d 635 (1965). Here, Suppliers premised their bid upon the expectation they would be paying market wages to end-dump truck drivers for delivery of fill materials. They agreed to pay and did pay that amount. If the Department is allowed to change its interpretation of the rule, Suppliers will be penalized and required to pay the $500,000 difference between the applicable prevailing wage and the market rate actually paid to end-dump truck drivers, seven years after the job's completion. This would result in the public, as owner of the airport, being subsidized to that extent at the expense of these small businesses.
¶ 37 A manifest injustice is involved. It is self-evidently unfair to permit the Department to adopt and publicly distribute an interpretive policy memorandum and later deny the memorandum's plain reading after contractors have relied upon it to their detriment.[8] It is the public policy of our bidding *903 system that public works contractors and subcontractors strive to submit the lowest bid, to the taxpayers' benefit. Requiring contractors to pay prevailing wages for work "upon public projects" theoretically puts all bidders on a level playing field, by preventing contractors from paying lower wages in order to underbid others. However, such a level playing field exists only if wage rates are certain and known to all bidders. Bidders must be able to rely on the plain meaning of regulations and Department interpretations, without fear that a state agency will later penalize them by adopting a different interpretation after they have performed and accepted payment.
¶ 38 If the Department were allowed to change its interpretation of a regulation after contractors had performed, it would have the effect of impairing the obligations of those contractsan effect forbidden by article I, section 23 of our state constitution. See also U.S. Const. art I, § 10. It is presumed that any contract "is made in contemplation of existing law." Shoreline Cmty. Coll. Dist. No. 7 v. Employment Sec. Dep't, 120 Wash.2d 394, 410, 842 P.2d 938 (1992). The department policy memorandum, while not a statute or a regulation, nonetheless curried the imprimatur of Department policy determination. Requiring Suppliers to retroactively pay higher salaries based on a change of policy, while still receiving only the previously negotiated payment from the State through CTI, would deprive Suppliers of a large portion of the benefit of their bargain. This court cannot countenance such an inequitable result.
¶ 39 Allowing the Department to adopt new and changing interpretations would also result in finding WAC 296-127-018 unconstitutionally vague. Regulations are unconstitutionally vague if they allow an administrative agency to make arbitrary discretionary decisions. Anderson v. City of Issaquah, 70 Wash.App. 64, 77-78, 851 P.2d 744 (1993). A statute or regulation that forbids or requires the doing of an act in terms so vague that people of common sense must guess as to its meaning and differ as to its application violates the first essential of due process. Id. at 75, 851 P.2d 744 (citing Connally v. General Constr. Co., 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926)); see also Haley v. Med. Disciplinary Bd., 117 Wash.2d 720, 739, 818 P.2d 1062 (1991). If contractors and subcontractors cannot rely on the consistency of clear department interpretations in effect at the time they enter into a contract, they are left to guess at the meaning of regulations. Thus, the result the Department urges us to reach would be not only manifestly unjust, but unconstitutional.
¶ 40 Precluding the Department from applying its new policy position, on the other hand, does not impair any legitimate department functions. Suppliers simply seek to hold the Department to its previously expressed policy as plainly read and not subject them to post hoc policy.
¶ 41 In sum, we find all the elements of equitable estoppel met. This court will not sanction a government agency's arbitrary decision to change its interpretation of rules and enforce such change against small businesses that have performed under their contract. Relying on existing law and policy, Suppliers made good faith payment of market wages based upon competitive prices of the marketplace, rather than higher "prevailing" wages. The Department is equitably estopped from enforcing a new changed interpretation of regulations, which was not communicated to Suppliers until after all payment had changed hands. Although the Department may prospectively apply its new, broader interpretation of what wages must be paid for delivery of fill material under WAC 296-127-018, it may not apply this interpretation retroactively.
C. Attorney Fees (Equal Access to Justice Act)
¶ 42 Suppliers request attorney fees up to $25,000 on appeal. Under the equal access to justice act (EAJA) "a court shall award a qualified party that prevails in a judicial review of an agency action fees and other expenses, including reasonable attorneys' fees, unless the court finds that the agency action was substantially justified or that circumstances make an award unjust." RCW 4.84.350(1). While we typically review an award of fees under the EAJA for abuse *904 of discretion, Moen v. Spokane City Police Dep't, 110 Wash.App. 714, 717, 42 P.3d 456 (2002); Alpine Lakes Prot. Soc'y v. Dep't of Natural Res., 102 Wash.App. 1, 19, 979 P.2d 929 (1999), here we have considered estoppel issues not previously reviewed. Therefore, to the extent our independent determination of fees and costs under EAJA is interrelated with our judicial review, the review must be de novo.
¶ 43 Although we have upheld the Department's broader interpretation of its regulation, we concluded that the Department is equitably estopped from enforcing its order in this case. Therefore, Suppliers are the prevailing party in this appeal. The question is whether the Department's actions here were "substantially justified" under RCW 4.84.350(1).[9] The Court of Appeals declined to award fees, holding the Department's reliance on Superior II was "substantially justified." Silverstreak, 125 Wash.App. at 219, 104 P.3d 699.[10] We agree.
¶ 44 "Substantially justified means justified to a degree that would satisfy a reasonable person." Moen, 110 Wash.App. at 721, 42 P.3d 456 (citing Plum Creek Timber Co. v. Forest Practices Appeals Bd., 99 Wash.App. 579, 595, 993 P.2d 287 (2000)). It "`requires the State to show that its position has a reasonable basis in law and fact.'" Cobra Roofing Serv., Inc. v. Dep't of Labor & Indus., 122 Wash.App. 402, 420, 97 P.3d 17 (2004) (quoting Constr. Indus. Training Council v. Wash. State Apprenticeship & Training Council, 96 Wash.App. 59, 977 P.2d 655 (1999) (citing Aponte v. Dep't of Soc. & Health Servs., 92 Wash.App. 604, 623, 965 P.2d 626 (1998))). The relevant factors in determining whether the Department was substantially justified are, therefore, the strength of the factual and legal basis for the action, not the manner of the investigation and the underlying legal decisions.
¶ 45 Here, the Department's actions would satisfy a reasonable person, given that the Department (1) received a wage complaint while the Third Runway Project was still ongoing, (2) has a statutory duty to investigate all possible wage violations, (3) has a duty to construe the prevailing wage act liberally in favor of the workers, and (4) relied heavily on existing and favorable Washington case precedent. Thus, even though the Department changed its interpretation of the regulation, the Department was "substantially justified," as that term is used in RCW 4.84.350(1), in bringing and prosecuting this action. Accordingly, we deny Suppliers' request for attorney fees.

CONCLUSION
¶ 46 The remedial nature of the prevailing wage act, the liberal construction that the provisions of the act are to be given to protect workers, and the high level of deference accorded to the Department Director's interpretations and findings lead us to uphold the Director's determination that the drivers in this case "otherwise participated in the incorporation of the materials into the project." However, we hold that the Department is equitably estopped from retroactively enforcing the new interpretation of its regulations. Thus, we affirm, albeit on different grounds, the Court of Appeals' holding that the drivers are not entitled to prevailing wage. Finally, because the Department was substantially justified in its actions, we affirm the Court of Appeals' denial of attorney fees to Suppliers.
WE CONCUR: Justice TOM CHAMBERS, Justice CHARLES W. JOHNSON and Justice BOBBE J. BRIDGE.
MADSEN, J. (concurring).
¶ 47 I agree with part B of Justice J. Johnson's concurrence/dissent and with part C of Chief Justice Alexander's majority opinion.
FAIRHURST, J. (concurring in part and dissenting in part).
¶ 48 I agree with the majority's conclusion that the Department of Labor and Industries' *905 (Department) interpretation of its own regulations is entitled to deference and that the truck drivers in this case were workers upon a public works project. I also agree with the majority's conclusion that the respondents, Silverstreak, Inc., T-Max Construction, Stowe Construction, Gary McCann Trucking, and Buckley Recycling (hereinafter Suppliers) are not entitled to attorney fees. However, I would hold that the Suppliers are not entitled to relief under the doctrine of equitable estoppel. As a result, I would reverse the Court of Appeals and hold that the truck drivers are entitled to prevailing wages.
¶ 49 Equitable estoppel requires that an admission, statement, or act has been detrimentally relied on by another party. Campbell v. Dep't of Soc. & Health Servs., 150 Wash.2d 881, 902, 83 P.3d 999 (2004) (citing Dep't of Ecology v. Campbell & Gwinn, L.L.C., 146 Wash.2d 1, 19, 43 P.3d 4 (2002)). "Equitable estoppel against the government is not favored." Campbell, 150 Wash.2d at 902, 83 P.3d 999 (citing Campbell & Gwinn, 146 Wash.2d at 20, 43 P.3d 4; Kramarevcky v. Dep't of Soc. & Health Servs., 122 Wash.2d 738, 743, 863 P.2d 535 (1993)). To establish equitable estoppel against the government, the party seeking relief must prove the following elements by clear, cogent, and convincing evidence: (1) an admission, act, or statement that is inconsistent with a later claim; (2) reasonable reliance on that admission, act, or statement; and (3) that an injury would result if the first party is permitted to repudiate or contradict the earlier admission, act, or statement. Campbell, 150 Wash.2d at 902, 83 P.3d 999 (citing Campbell & Gwinn, 146 Wash.2d at 20, 43 P.3d 4). Additionally, "[t]he doctrine may not be asserted against the government unless it is necessary to prevent a manifest injustice and it must not impair the exercise of government functions." Id. at 902-03, 83 P.3d 999.
¶ 50 The Suppliers have failed to prove by clear, cogent, and convincing evidence that the Department's current position that the truck drivers are entitled to prevailing wages is inconsistent with a previous representation the Department made to the Suppliers. The 1992 memorandum that the Suppliers allegedly relied on was not tailored to the specific facts of this case. The record indicates that Keith Benson of City Transfer of Kent, Inc. (CTI), who is not a party to this case, contacted Jim Christenson at the Department and asked for "clarification" and "what the Department's position[ ] was." Administrative Record (AR) at 3330. The record does not reflect that Benson presented Christenson with any or all of the relevant facts about the type of work the truck drivers would perform or specifically inquired about whether an employer must pay prevailing wages to workers who dump fill in strategic locations directly on a public works project in coordination with other workers who spread the fill.
¶ 51 The 1992 memorandum that Benson received in response to his inquiry does not even refer to end-dump truck drivers. Rather, the 1992 memorandum is merely a general memorandum stating that "[d]elivery of materials using a method in which the truck does not roll while the material is placed, or rolls only enough distance to allow the materials to exit the truck, does not include incorporation of the materials into the job site." Suppl. AR at 3395.
¶ 52 Furthermore, considering the general nature of the 1992 memorandum, the Suppliers' reliance on that memorandum was not reasonable. The memorandum was not a rule or regulation. At most, it was an interpretive statement which does "not implement or enforce the law," and "serve[s] only to aid and explain the agency's interpretation of the law." Wash. Educ. Ass'n v. Wash. State Pub. Disclosure Comm'n, 150 Wash.2d 612, 619, 80 P.3d 608 (2003). Thus, it was not unreasonable for the Department's interpretation of the law to evolve as it was presented with new factual scenarios, such as occurred in this case.
¶ 53 Finally, the Suppliers have failed to prove that they will be subject to a "manifest injustice" if required to pay the truck drivers' prevailing wages. The Department did not distribute the 1992 memorandum to the Suppliers, nor did it tell the Suppliers to rely on the positions contained in the memorandum when making their bids. The majority is incorrect when it says the Department was *906 "expressly holding out the memorandum as its position on whether the method of delivery employed in this case would entitle the end-dump truck drivers to prevailing wages." Majority at 902. The Department gave no position.
¶ 54 The Suppliers applied their own interpretation to the 1992 memorandum in order to determine whether the truck drivers were entitled to prevailing wages. The Suppliers did not ask the Department for an interpretation of the prevailing wage laws, nor did they ask for a declaratory order as allowed under RCW 34.05.240 regarding the application of prevailing wages to their work on the third runway project.
¶ 55 As the administrative law judge noted in his conclusion of law, "[t]his informal, informational contact between a member of the public and an agency representative is insufficient to create a duty of the Department to specifically advise the respondents regarding its interpretation of the activities occurring in connection with the Third Runway Project." AR at 3337. Therefore, the Suppliers have failed to prove by clear, cogent, and convincing evidence that the Department made an admission, act, or statement to them on which they reasonably relied. As a result, the Suppliers' reliance on a 1992 memorandum provided to them by a third party that did not apply to the specific work the truck drivers were to perform was not reasonable, and they are not entitled to equitable relief in this case.
¶ 56 Further, the Suppliers' equitable estoppel claim does "impair the exercise of government functions" because it prevents the Department from securing prevailing wages on behalf of the employees who were entitled to those wages under the law. See RCW 39.12.065.
¶ 57 The truck drivers in this case were workers upon a public works project who participated in the incorporation of fill material into the third runway embankment. If the Suppliers relied on a 1992 memorandum from the Department in making their bid on the third runway project, such reliance was not reasonable. As a result, I would not grant the Suppliers relief under the doctrine of equitable estoppel. Accordingly, I would reverse the Court of Appeals and hold that the truck drivers are entitled to prevailing wages.
WE CONCUR: Justice SUSAN OWENS.
J.M. JOHNSON, J. (concurring in part and dissenting in part).
¶ 58 Many years after dissemination of the Department of Labor and Industries' (L & I or Department) original written interpretation of its rule on wages, and instead of promulgating a new rule, the Department altered its interpretation. It then enforced this new interpretation against five small businesses (the Suppliers) that had acted to their detriment by paying wages in reliance upon L & I's original interpretation. The result, a retroactive increase in wages already paid by the Suppliers after completion of contracts, is blatantly unfair. Thus, I agree with the majority that L & I is estopped from enforcing its new interpretation of WAC 296-127-018 against the Suppliers. However, I disagree with the majority's decision to defer to the Department and prospectively uphold its new interpretation of WAC 296-127-018. I would affirm the Court of Appeals' decision that dump truck delivery of fill materials, even directly onto a project site, does not constitute "participation in incorporation of materials" for purposes of determining prevailing wages.[1] If the Department wants to change the law, it should ask the legislature or properly consider a new rule.
¶ 59 Perhaps more importantly, I disagree with the majority's decision not to award attorney fees to the Suppliers. The equal access to justice act (EAJA) was adopted to protect small businesses when they defend against unreasonable agency actions. Laws of 1995, ch. 403, § 901. Because the Department's actions in the present case were not *907 substantially justified, I would hold that the Suppliers are entitled to attorney fees.
A. The Department is estopped from enforcing its new interpretation of WAC 296-127-018 against the Suppliers
¶ 60 The majority correctly concludes that the Suppliers established the five elements for a successful estoppel claim against the government by clear, cogent, and convincing evidence. Majority at 901; see also Kramarevcky v. Dep't of Soc. & Health Servs., 122 Wash.2d 738, 743-44, 863 P.2d 535 (1993) (giving elements and standard of proof for estoppel claim against the government).
¶ 61 First, the Department's 1992 memorandum, interpreting WAC 296-127-018 consistently with the Suppliers' current understanding, constitutes a statement by the party to be estopped, which is inconsistent with its later claims. As noted by the majority, "the Department sent the policy memorandum to bidders on the Third Runway Project, a group that included Suppliers, expressly holding out the memorandum as its position on whether the method of delivery employed in this case would entitle the end-dump truck drivers to prevailing wages." Majority at 902.
¶ 62 Second, the Suppliers acted in reliance upon L & I's statement in calculating and submitting their bids to work on the Third Runway Project, assuming a lower wage rate was applicable. Majority at 902.
¶ 63 Third, the Suppliers would be injured if the Department were allowed to repudiate its prior statement. Specifically, the Suppliers would be liable for approximately $500,000 in wages, to be paid seven years after the job's completion. Majority at 902.
¶ 64 Additionally, a favorable ruling on the Suppliers' estoppel claim is necessary to prevent a manifest injustice. As the majority explains, "[i]t is self-evidently unfair to permit the Department to adopt and publicly distribute an interpretive policy memorandum and later deny the memorandum's plain reading after contractors have relied upon it to their detriment." Majority at 902.
¶ 65 Finally, to find for the Suppliers will not impair governmental functions since the "Suppliers simply seek to hold the Department to its previously expressed policy as plainly read." Majority at 903. In sum, the Suppliers have successfully established the five elements of their estoppel claim. Thus, as the majority correctly holds, L & I may not enforce its new interpretation of WAC 296-127-018 in the present case.
B. The Court of Appeals was correct to reject the Department's new, overbroad interpretation of WAC 296-127-018 and this court should affirm its decision
¶ 66 The plain language of WAC 296-127-018 provides that two conditions must be met before prevailing wages[2] will be required for drivers involved in the delivery of gravel, concrete, asphalt, or similar materials. First, the drivers must "deliver . . . materials to a public works project site." WAC 296-127-018(2)(a). Second, the drivers must "perform any spreading, leveling, rolling, or otherwise participate in any incorporation of the materials into the project." Id. Applying an accepted canon of statutory constructionejusdem generis[3]the Court of Appeals interpreted the latter requirement to mean that drivers "must otherwise participate in incorporation of fill material at the site in a manner similar to spreading, leveling, or rolling" to be deemed participants in the incorporation process. Silverstreak, Inc. v. Wash. State Dep't of Labor & Indus., 125 Wash.App. 202, 211, 104 P.3d 699 (2005) (emphasis added). Because there was no evidence that the drivers had engaged in any activity similar to spreading, leveling, or rolling, the Court of Appeals reversed the Department's determination that the drivers had participated in the incorporation process. *908 Id. at 216, 104 P.3d 699. I would affirm the Court of Appeals' decision on this point.
¶ 67 The majority rejects the Court of Appeals' determination for a number of reasons, all of which are erroneous. First, the majority suggests that the Court of Appeals has applied the rule of ejusdem generis in a manner that contradicts the legislature's intent in enacting the prevailing wage act (the Act) (chapter 39.12 RCW). Majority at 899. The purpose of the Act is twofold: (1) to protect employees working upon public works from substandard wages and (2) to preserve local wages. Superior Asphalt & Concrete Co. v. Dep't of Labor & Indus., 84 Wash.App. 401, 406, 929 P.2d 1120 (1996) (Superior I) (citing Everett Concrete Products, Inc. v. Department of Labor & Indus., 109 Wash.2d 819, 823, 748 P.2d 1112 (1988)), review denied, 132 Wash.2d 1009, 940 P.2d 654 (1997). Because the drivers here were merely delivering materials, they were not working upon a public works project within the meaning of the Act. See Superior Asphalt & Concrete Co. v. Dep't of Labor & Indus., 112 Wash.App. 291, 299-300, 49 P.3d 135 (2002) (Superior II) (indicating mere delivery does not require prevailing wages), review denied, 149 Wash.2d 1003, 70 P.3d 964 (2003). Thus, denying these drivers prevailing (Seattle) wages[4] does not implicate the Act's purpose to protect employees working upon such projects. Additionally, under the Court of Appeals' interpretation, the Act's protective mechanisms will continue to function as to those drivers actually working upon public works projects. Thus, the court's reading of WAC 296-127-018 does not undermine the preservation of local wages. Therefore, the Court of Appeals' interpretation of WAC 296-127-018, utilizing the rule of ejusdem generis, does not conflict with the legislature's intent.
¶ 68 The majority also errs in relying upon the term "otherwise" as a basis for rejecting the Court of Appeals' decision. According to the majority, "the words `or otherwise participated' expand the coverage of the prevailing wage act to workers who participate in incorporating materials into the project in any way besides the three enumerated." Majority at 900. The majority would emphasize "otherwise" to the extent of ignoring the limiting terms "spreading, leveling, or rolling," thus, contradicting its own admonition that "a reviewing court has a duty to give meaning to every word in a regulation." Majority at 900. Like the Court of Appeals, I would decline to "rewrite the statute by ignoring the words of limitation" that are plainly present. Silverstreak, 125 Wash.App. at 217-18, 104 P.3d 699.
¶ 69 Finally, the majority faults the Court of Appeals for failing "to accord the proper weight to the Department's interpretation of its own properly promulgated regulation." Majority at 900. However, it is actually the majority that has erred by giving too much deference to L & I or more precisely giving deference to the Department's belated reinterpretation of its policy.
¶ 70 In its final decision, the Department broadly interpreted the phrase "or otherwise participate in any incorporation of the materials" to encompass any activities by a driver who "contribute[ ] to the efficiency and timely completion" of an operation. Administrative Record (AR) at 3346-47 (relying on Superior II, 112 Wash.App. 291, 49 P.3d 135). L & I also interpreted the phrase to encompass all driver activities that are "`directly related to the prosecution of the work'" and "`necessary for the completion of that work.'" AR at 3347 (quoting Heller v. McClure & Sons, Inc., 92 Wash.App. 333, 337, 963 P.2d 923 (1998)).
¶ 71 As explained in detail by the Court of Appeals, the Department's reliance on both Superior II and Heller for its new, substantially broader interpretation of WAC 296-127-018 was misplaced. See Silverstreak, 125 Wash.App. at 216-17, 104 P.3d 699. Moreover, the Department's new interpretation completely disregards the plain language of WAC 296-127-018. See id. at 213, 218, 104 P.3d 699. Thus, L & I's decision was plainly erroneous and the Court of Appeals did not error in rejecting it.
¶ 72 In sum, the majority's rationale for rejecting the Court of Appeals' interpretation of WAC 296-127-018 is unconvincing. Accordingly, *909 I would affirm the Court of Appeals' interpretation and refuse to uphold the Department's new, overbroad reading of WAC 296-127-018. I would also affirm the Court of Appeals' conclusion that there is insufficient evidence that the end-dump truck drivers here participated in incorporation of fill material. See Silverstreak, 125 Wash. App. at 214, 104 P.3d 699.
C. The Suppliers should be awarded attorney fees
¶ 73 In enacting EAJA, the legislature explicitly stated its desire to provide remedy to small businesses, like the Suppliers, who must defend against unreasonable agency action. Laws of 1995, ch. 403, § 901. Under EAJA, a qualified party who prevails in an administrative action is entitled to attorney fees unless the agency's action is found to be "substantially justified" or it is determined that "circumstances make an award unjust." RCW 4.84.350(1). An agency's position may be deemed "substantially justified" only if it has "a reasonable basis in law and fact." Constr. Indus. Training Council v. Washington State Apprenticeship & Training Council, 96 Wash.App. 59, 68, 977 P.2d 655 (1999). It is undisputed that the Suppliers are qualified, prevailing parties under RCW 4.84.350. Majority at 904.
¶ 74 Like the Court of Appeals, the majority declines to award the Suppliers fees because "the Department's reliance on Superior II was `substantially justified.'" Majority at 904. I disagree with the majority's ultimate conclusion not to award fees, as well as its rationale.
¶ 75 Contrary to the assertions of the majority and Court of Appeals, the Department was not "substantially justified" in its pursuit of this case. The Department has a duty to promptly and thoroughly investigate both the law and the facts surrounding a complaint before pursuing an alleged violation of the prevailing wage act. See RCW 39.12.065(1). Here, the Department waited until long after the project was complete to issue a notice of violation that, ultimately, had insufficient support in the record. See Silverstreak, 125 Wash.App. at 214, 104 P.3d 699 (concluding that record provides no evidence of "additional task beyond mere delivery of the fill"). In prosecuting its claim against the Suppliers, the Department applied an erroneous interpretation of WAC 296-127-018, going far beyond the plain language of that regulation. The Department also misconstrued applicable legal precedent and contradicted its own prior policy statement. Under these circumstances, it cannot be said that the Department's position had "a reasonable basis in law [or] fact." Constr. Indus. Training Council, 96 Wash.App. at 68, 977 P.2d 655. Accordingly, and in conformance with the language and underlying purpose of EAJA to reimburse those forced to litigate against a powerful government, the Suppliers should be awarded attorney fees under RCW 4.84.350. Because the majority holds otherwise, I concur only in its disposition of this case.
WE CONCUR: Justice RICHARD B. SANDERS.
NOTES
[1] The prevailing wage act, chapter 39.12 RCW, provides that hourly wages paid to workers "upon all public works" (the "prevailing wage") must be at least the prevailing rate paid for an hour's work in the same trade or occupation in the largest city within the county where the work is performed. RCW 39.12.020. It is often significantly higher than the rate otherwise paid where the work is actually performed (the "market wage") because many projects are constructed outside the largest city of a county.
[2] End-dump trucks deliver and dump the fill load by stopping the truck and then raising the truck bed hydraulically, allowing the fill to exit by force of gravity into a pile below the bed. By contrast, belly-dump trucks dump and spread the fill materials by opening a gate in the bottom, or the "belly," of the trucks as they drive over the project. Because belly-dump truck drivers spread the fill as they deliver it, they clearly fall within the regulation at issue here and are paid prevailing wages.
[3] The Department did not cross-appeal this holding, and the question of whether the drivers participated in "compaction" of the delivered fill materials is not before this court. Unchallenged findings become verities on appeal. State v. Rankin, 151 Wash.2d 689, 709, 92 P.3d 202 (2004) (citing State v. Hill, 123 Wash.2d 641, 644, 870 P.2d 313 (1994)).
[4] Under RCW 39.12.010, the Department calculates prevailing wages as the rate paid in the largest city in the county.
[5] The dissent points out that denying prevailing wages to drivers who are not actually working on a public works project would not be inconsistent with this legislative purpose. However, the drivers here were working on a public works project, as we conclude below.
[6] These factors include whether the impacted worker (i) improved the efficiency of the operation, (ii) was necessary to the completion of the public works project, and (iii) displaced workers who would otherwise be entitled to prevailing wages.
[7] Christenson does not recall speaking by phone with CTI's vice-president.
[8] Even the trial court noted "an element of unfairness in [upholding the Department's position] due to the confusing memoranda and regulations promulgated by the Department." CP at 3. In its order upholding the Director's order, the superior court urged the Department to reconsider its memorandum and regulations in light of a contractor's reliance upon them.
[9] It is unchallenged that Suppliers' claim is within EAJA. See RCW 4.84.340(5).
[10] The superior court did not award fees because it determined the Department was the prevailing party.
[1] Under RCW 39.12.010(1), the "prevailing rate of wage" is defined as "the rate of hourly wage, usual benefits, and overtime paid in the locality . . . to the majority of workers, laborers, or mechanics, in the same trade or occupation." The "locality" is "the largest city in the county wherein the physical work is being performed." RCW 39.12.010(2).
[2] See supra note 1.
[3] "The rule of ejusdem generis requires that general terms appearing in a statute in connection with specific terms are to be given meaning and effect only to the extent that the general terms suggest similar items to those designated by the specific terms." Majority at 899 (citing Davis v. Dep't of Licensing, 137 Wash.2d 957, 970, 977 P.2d 554 (1999); Dean v. McFarland, 81 Wash.2d 215, 221, 500 P.2d 1244 (1972)).
[4] See supra note 1.